RAFAEL SANTOS RODRÍGUEZ y OTROS, demandantes y recurrentes, *v.* AUTORIDAD DE LAS FUENTES FLUVIALES DE PUERTO RICO, demandada y recurrida.

*Número:* R-63-284          *Resuelto:* 13 de octubre de 1964

*Federico E. Virella,* y *Luis A. Pereira Buonomo,* abogados de los recurrentes; *José Antonio Arabía,* y *Carlos Eduardo Lube,* abogados de la recurrida.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

La solicitud de sentencia declaratoria ante la ilustrada Sala sentenciadora expone: Que allá para fines de diciembre de 1960 y enero de 1961 la corporación pública recurrida practicó una investigación sobre consumos bajos en los contadores instalados en las casas donde residían algunos empleados suyos y que debido a dicha investigación se les formuló cargos a los empleados aquí recurrentes, suspendiéndolos de empleo y sueldo mientras se ventilaban dichos cargos; que los recurrentes solicitaron de la recurrida que los cargos formulados se ventilasen conforme al Art. 35 del convenio colectivo firmado entre la corporación recurrida y la Unión de Trabajadores de la Industria Eléctrica y Riego de Puerto Rico, Afiliada a la AFL-CIO Local Número 24886,

el cual, en sus Secs. 18 y 19 establece la forma y procedimiento para un comité de ajustes y un procedimiento de arbitraje, petición que fue denegada, y por el contrario, los cargos fueron vistos conforme al Reglamento de la demandada; que la Ley de la Autoridad de las Fuentes Fluviales de Puerto Rico—22 L.P.R.A. sec. 197 (pág. 94)—autoriza a la Junta de Gobierno de dicha Autoridad a promulgar un Reglamento sobre nombramientos, separaciones, ascensos, traslados, ceses, reposiciones, suspensiones, licencias y cambios de categoría, remuneración o título de los funcionarios y empleados de la Autoridad, mediante un plan análogo, en tanto la Junta de Gobierno lo estime compatible con los más altos intereses de la Autoridad, de sus empleados y de sus servicios al público, al que pueda estar en vigor para los empleados del Gobierno Estatal al amparo de la Ley de Personal—3 L.P.R.A. sec. 671 (pág. 601)—; que el Reglamento aplicado por la Autoridad recurrida es nulo por no haber sido hecho conforme a los procedimientos que establece la Ley de Personal ya que no les concede a los empleados suspendidos o despedidos la revisión ante un Tribunal de Justicia que provee la Ley de Personal; que habiendo sido despedidos definitivamente los recurentes mediante el procedimiento establecido en el Reglamento de la Autoridad y no mediante el procedimiento establecido en el convenio colectivo tales despidos resultan ilegales.

Lo más importante de la contestación de la recurrida son las defensas especiales formuladas en dicha contestación: (1) Que el Tribunal de anterior instancia carece de jurisdicción toda vez que las alegaciones demuestran que se trata de imputar una violación de las disposiciones del convenio colectivo entre los demandantes y la demandada lo cual constituye una práctica ilícita de trabajo que debe ser revisada por la Junta Estatal de Relaciones del Trabajo de Puerto Rico; (2) Que el remedio solicitado no procede o el Tribunal de anterior instancia carece de jurisdicción para

entender en el mismo por tratarse de una revisión de pro-
cedimientos administrativos y cuasi judiciales interpuesta
después de transcurrido un término irrazonablemente ex-
tenso desde que se dictó la decisión a ser revisada; (3) Que
la demanda no aduce una causa de acción ya que de lo ale-
gado se desprende que la adopción de la reglamentación
sobre el personal y las normas de conducta y disciplinarias
aprobadas por la Autoridad se hicieron conforme a lo dis-
puesto en la Ley de la Autoridad de las Fuentes Fluviales
de Puerto Rico—Ley Núm. 83 de 2 de mayo de 1941, según
enmendada por la Ley Núm. 19 de 8 de abril de 1942.

La ilustrada Sala sentenciadora concluyó que al alegar
los demandantes, ahora recurrentes, "que sus despidos fue-
ron hechos a espaldas del convenio colectivo, conforme al
inciso F de la sección 69 de la Ley creando la Junta de
Relaciones del Trabajo de Puerto Rico . . . los demandan-
tes están imputando a la demandada una práctica ilícita de
trabajo que puede ventilarse ante la junta por envolver
cuestiones de *política pública* pero éste no es un pleito para
defender la política pública afectada por la tal práctica ilícita
de trabajo—en cuyo caso la junta tendría jurisdicción exclu-
siva—sino para hacer valer derechos privados alegadamente
originados en el convenio colectivo [citas]. Empero, la difi-
cultad que confrontan los demandantes al promover ante nos
la ilegalidad de sus despidos es otra. Con anterioridad, la
Unión a la cual están afiliados los demandantes, acudió en
representación de ellos a la Junta de Relaciones del Trabajo
con idéntico planteamiento y el mismo fue desestimado.
(Véase aviso de desestimación de cargo [de la] Junta de
Relaciones del Trabajo de P.R., caso número CA-2501 de 28
de agosto de 1961, confirmado en 11 de septiembre de 1961.)
De la resolución administrativa no se ha intentado revisión
alguna ante el Tribunal Supremo de Puerto Rico conforme a
Ley, siendo por consiguiente dicha resolución final y obliga-

toria para las partes y no puede ahora atacarse en un procedimiento subsidiario ante el Tribunal Superior".

La razón que tuvo el Presidente de la Junta de Relaciones del Trabajo de Puerto Rico para negarse a expedir una querella, fue la siguiente: "La querellante [la Unión] ha requerido del patrono que las suspensiones de los empleados envueltos en este caso sean discutidas en el Comité de ajuste de acuerdo al artículo VI Inciso (b) del convenio. El patrono reiteradamente ha manifestado que los casos de estos empleados no son objeto de ser discutidos en el Comité de ajuste. Basa su contención en que el convenio colectivo en su artículo XVII, inciso 8, dispone el procedimiento a seguirse en casos de suspensión de empleo y sueldo. Sostiene que al negociarse esta disposición se tomó en consideración que el artículo 7, inciso (a) de la Ley que crea la Autoridad de las Fuentes Fluviales de Puerto Rico, [Ley número 19 de 8 de abril de 1942] dispone que todos los nombramientos, separaciones, ascensos, traslados, ceses, reposiciones, suspensiones, licencias y cambios de categoría, remuneración o título de los funcionarios y empleados de la Autoridad, se harán y permitirán como dispongan las normas y reglamentos que prescriba su Junta de Gobierno. El artículo XVII inciso 8 provee para la celebración de una vista en todos los casos de suspensión de empleo y sueldo. En esta vista el trabajador estará debidamente representado por la Unión. Las vistas son celebradas por la Oficina de Personal del patrono. El Director de Personal designará a las personas que juzguen los casos teniendo en cuenta que en el panel de juzgadores no figure el jefe del despedido. Para guiarse en la resolución de los casos el panel de juzgadores utiliza un Manual de Normas y Procedimientos de Personal que ha sido preparado por la Autoridad. La prueba revela que los casos de suspensión de empleo y sueldo siempre han sido ventilados de acuerdo con el artículo XVII, inciso 8, del convenio. No hay ningún caso de suspensión

definitiva que haya sido referido al comité de ajuste. A base de la prueba cabe concluir que el patrono no viene obligado a discutir en el comité de ajuste las suspensiones de los empleados envueltos en este caso. En vista de todos los anteriores fundamentos rehuso expedir [querella] y procedo a desestimar, como por la presente desestimo, el cargo en el caso de epígrafe." Este aviso de desestimación de cargo, expedido por el Presidente de la Junta, fue confirmado por la Junta de Relaciones del Trabajo de Puerto Rico, según se ha dicho.

Considerados todos los indicios contenidos en la prueba, es indudable, que en este caso, la corporación pública recurrida, combinó el procedimiento disciplinario para casos de suspensión de empleo y sueldo establecido en el Art. XXXVII del convenio colectivo con el procedimiento de vista administrativa provisto en su propio reglamento en virtud de la facultad que le fue otorgada por el Art. 7 inciso A de la Ley de las Fuentes Fluviales de 2 de mayo de 1941, según enmendada por la Ley Núm. 19 de 8 de abril de 1942.

La vista administrativa se celebró ante tres oficiales examinadores nombrados por el Director de la División de Personal, asistidos por un asesor y en representación de la División de Distribución y Ventas, presentó la prueba un oficial de dicho nivel administrativo, asesorado por los ingenieros de la división. El empleado requerido estaba representado por un delegado de la Unión Obrera, y ambos asistidos por abogados. El oficial examinador que presidía la vista informó que: "El fin de esta vista administrativa es para la Autoridad tratar de conseguir toda aquella información que sea necesaria para determinar si a la persona que se acusa de violar cierto reglamento de la Autoridad, es culpable o inocente. La Autoridad no tiene interés ninguno en que un empleado, pues, se encuentre culpable, pero tiene sí gran interés en que se oigan todos los pormenores del caso y

cuando llegue a una conclusión, que sea una conclusión justa y razonable . . . "

El Lic. Virella, en representación del recurrente hizo constar: "Que esta comisión nombrada para intervenir con los hechos de este caso, no tiene jurisdicción para intervenir en el mismo. Las razones que tenemos para plantear esto son, en primer término, que el obrero sobre el cual se va a ver la vista, pertenece a una Unión que firmó un convenio con la Autoridad, el cual estaba en vigor a la fecha de los hechos que se alegan y todavía está en vigor y este convenio, en su artículo VI letra b (art. XXXV sec. 18(a) del nuevo convenio colectivo), crea un comité de ajuste, el cual debe resolver todas las querellas y situaciones que surjan con motivo de violación o de faltas que se hayan cometido por cualquiera de las partes. Nosotros entendemos que el organismo con jurisdicción para intervenir en la vista que hay que celebrar en este caso, es dicho comité de ajuste. . . . La otra cuestión que queremos plantear es que hay unos cargos, los cargos que se alega por haber infringido ciertas disposiciones reglamentarias el obrero, disposiciones que corresponden a una especie de reglamento de normas y procedimientos de la Autoridad de Fuentes Fluviales, cuyas normas entendemos nosotros no han sido aprobadas en ningún momento por la Unión y, por lo tanto, no pueden regir contra la Unión por no haber sido incluidas en el convenio colectivo."

Resolviendo la cuestión planteada el oficial examinador que presidió la vista, se expresó así: "Esto no es una querella. Esto es una suspensión que la parte administrativa no la considera como una querella. Ahora, cuando existe una suspensión, es distinto. Una querella es una cosa y una suspensión es otra. Cuando existe una suspensión, ya entramos en la página 69 y 70 del convenio (art. XXXVII pág. 95 del nuevo convenio colectivo referente al procedimiento disciplinario) donde se establece que se llevará a efecto una vista. La forma en que se lleve a cabo la vista, es un procedimiento

que lo establece la Autoridad. Otro punto que queremos aclarar, para que conste en récord también, es que en verdad que estas reglas disciplinarias y el manual no fueron discutidos entre la Unión y la dirección de esta Autoridad. La Autoridad cree que las normas disciplinarias y Administrativas y las reglas estas, son de incumbencia solamente de la Autoridad y no son negociables."

Después de celebradas las vistas correspondientes, el día 7 de abril de 1961, la Unión de Trabajadores de la Industria Eléctrica y Riego de Puerto Rico, radicó un cargo contra la Autoridad imputándole violaciones al Art. 8, Sec. 1, inciso (f) de la Ley de Relaciones del Trabajo de Puerto Rico, consistente en que el patrono desde el 25 de diciembre de 1960 y en adelante violó y aún continúa violando el Art. XVII Sec. 8 de las Disposiciones Generales del Convenio Colectivo vigente entre las partes entre los años 1958 y 1960 al no notificar la formulación de cargos dentro de los tres (3) días siguientes a la suspensión de Juan Rodríguez Colón, Pedro Monserrate Malavé y otros empleados. Al patrono además se le imputa que desde el 23 de enero de 1961 está violando el Art. VI Resolución de Reclamaciones—apartado (b) de dicho convenio—al negarse a discutir la suspensión de estos empleados en el comité de ajuste.

Después de examinar el legajo del caso, la transcripción de la vista, los informes de los Oficiales Examinadores, el día 12 de julio de 1961, el Director Ejecutivo de la Autoridad consideró probados los cargos y ordenó la separación definitiva de empleo y sueldo del recurrente. Como hemos visto, el día 28 de agosto de 1961, el Presidente de la Junta de Relaciones del Trabajo de Puerto Rico desestimó el cargo presentado por la Unión y el día 11 de septiembre de 1961 dicha Junta confirmó la actuación de su Presidente.

El procedimiento para ventilar un despido injustificado puede ser un procedimiento administrativo ordinario de destitución, cuando la Ley que crea el organismo corpora-

tivo o público así lo autoriza—Art. 7 inciso A de la Ley de Fuentes Fluviales—o puede verse mediante una querella ante el comité de arbitraje dispuesto en el convenio colectivo, cuando el contrato así lo autorice—Art. 8 inciso (1) (t) de la Ley de Relaciones del Trabajo de Puerto Rico, 29 L.P.R.A. sec. 69 (pág. 401). No tenemos, en este caso, que resolver, considerando la preponderancia de los elementos de Derecho Privado o de Derecho Público, como hasta ahora lo hemos hecho, cual de los dos procedimientos debe prevalecer, pues si bien es verdad que el patrono utilizó un procedimiento administrativo ordinario de destitución y la Unión obrera utilizó la radicación de un cargo ante la Junta de Relaciones del Trabajo, alegando, como práctica ilícita, la violación de la cláusula de arbitraje de un convenio, no es menos cierto que la Junta de Relaciones del Trabajo desestimó el cargo, por la deferencia que sabiamente creyó debía dársele al Art. 7 inciso A de la Ley de Fuentes Fluviales que le ordena seguir a la Autoridad, en cuanto a destituciones se refiere, un procedimiento análogo al establecido en la Sec. 31 de la Ley creando la Oficina de Personal, 3 L.P.R.A. sec. 671 (págs 601–603). El hecho que la Unión obrera recurriera a la Junta no hace irreversible la elección del remedio, sujeto a una ulterior revisión por este Tribunal y nada más. Sabido es que al resolver sobre cualquier cargo de práctica ilícita, la Junta de Relaciones del Trabajo tiene una amplia discreción en cuanto a si autoriza o no autoriza la querella, no siendo revisable por no constituir una adjudicación final, la orden desestimando el cargo: *Luce & Co.* v. *Junta de Relaciones del Trabajo*, 82 D.P.R. 96 (Blanco Lugo) (1961) cita precisa a las págs. 98–102.

■ En este caso se argumenta que no habiendo establecido en su Reglamento, la Autoridad de Fuentes Fluviales, un procedimiento de vista administrativa con ulterior revisión judicial, tal reglamento resulta nulo. La autoridad para revisar judicialmente una orden de destitución está implícita

cuando, como en este caso, la ley creando la Autoridad de Fuentes Fluviales indica un plan análogo al Plan de destitución establecido para la Oficina de Personal del Gobierno de Puerto Rico: *López* v. *Muñoz*, 80 D.P.R. 4 (Snyder) (1957) cita precisa a las págs. 9–12; *Rivera* v. *Benítez, Rector*, 73 D.P.R. 377 (Snyder) (1952) cita precisa a las págs. 381–383; Bernard Schwartz—*Una introducción al Derecho Administrativo Norteamericano*—págs. 173 *et seq.* (1962). Si el plan que se propone como modelo tiene revisión judicial, no es difícil concluir que es clara la intención legislativa que cualquier destitución de un empleado regular de la Autoridad de las Fuentes Fluviales de Puerto Rico puede ser revisada por la Sala correspondiente del Tribunal Superior de Puerto Rico.

*Por las razones expuestas se revoca la sentencia dictada por el Tribunal Superior de Puerto Rico, Sala de Caguas, de 31 de mayo de 1962 y se devuelve el caso para la declaración de derechos que no resulte incompatible con los términos de esta opinión.*