WILLIAM TORRES SOLANO, querellante y recurrido, *v.* PUERTO RICO TELEPHONE COMPANY, querellada y peticionaria.

*Número:* CE-85-574, CE-85-608    *Resuelto:* 8 de enero de 1987

*Jay García Gregory, Mario Arroyo Dávila, Leila Alvarado González, José F. Chaves Caraballo y José Luis Verdeales Mora-*

*les,* de *Fiddler, González & Rodríguez,* abogados de la recurrente; *Jaime Luciano Jiménez,* abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del Tribunal.

En estos casos consolidados, acordamos revisar las decisiones del Tribunal Superior, Sala de San Juan, en los recursos de revisión Civil Núm. 85-2337 (906) y Civil Núm. 85-2346. ([1])

En el primero el tribunal denegó la solicitud de revisión de la Puerto Rico Telephone Co. (la Telefónica), por entender que ésta no podía acudir al tribunal para que se revisara la decisión del oficial examinador nombrado, a tenor con el Reglamento de Personal para los Empleados Gerenciales adoptado por la compañía el 4 de abril de 1983. ([2]) Entendió que la decisión del oficial examinador era final y definitiva, no sujeta a revisión judicial a instancias del patrono.

En el segundo caso el tribunal rechazó la contención de la compañía de que el recurso de revisión del empleado debía ser desestimado por haber sido radicado luego de transcurridos treinta días desde que se notificó la decisión del oficial examinador. Se basó en que no existe disposición estatutaria que fije un plazo jurisdiccional específico para la presentación por el empleado de un recurso de revisión. Por esa razón declaró sin lugar la moción de desestimación de la compañía. ([3])

El trasfondo fáctico de los casos es el siguiente. El Sr. William Torres Solano era un empleado no unionado de la

---

([1]) En ambos recursos se impugnaba la decisión del oficial examinador que confirmó el despido del empleado, pero a su vez, ordenó que se le pagara su sueldo desde el 31 de mayo de 1984 hasta la fecha de la decisión.

([2]) Reglamento adoptado siguiendo la decisión en *Torres Ponce* v. *Jiménez,* 113 D.P.R. 58 (1982).

([3]) En ese caso el tribunal dictó orden para que la compañía mostrara causa por la cual no debía reducirse la sanción de despido a una suspensión de empleo y sueldo de treinta días. Al expedirse los autos se han paralizado los procedimientos.

Telefónica. El 31 de mayo de 1984 un supervisor le comunicó por escrito que quedaba suspendido de empleo y sueldo indefinidamente, por haber agredido con el puño en esa misma fecha, a un compañero de trabajo. El 22 de junio se le cambió la suspensión indefinida a un despido, efectivo al 31 de mayo, ya que esa era la sanción provista en la Regla 48 de la Sec. 10.4 del Reglamento de Personal para Empleados Gerenciales de la Puerto Rico Telephone Co. A tenor con dicho reglamento el empleado solicitó la revisión de la acción disciplinaria a la oficina del presidente de la compañía, por lo que el asunto fue remitido a un oficial examinador.

Luego de celebrada la vista evidenciaria y de recibir los alegatos de las partes, el oficial examinador confirmó el despido del señor Torres Solano por entender que había justa causa para el mismo. Sin embargo, a la luz de lo resuelto en *Cleveland Board of Education* v. *Loudermill,* 470 U.S. 532, 84 L. Ed.2d 494 (1985), ordenó que al empleado cesanteado se le pagara su sueldo desde el 31 de mayo de 1984 hasta el 15 de abril de 1985, fecha en que emitió su decisión. El examinador resolvió que el despido no podía ser efectivo sin concederle al empleado una previa oportunidad de ser oído.

Ambas partes acudieron al Tribunal Superior, Sala de San Juan, acogiéndose al procedimiento de revisión judicial de las decisiones administrativas. El tribunal dictó los pronunciamientos que señalamos anteriormente.

I

Al negarle a la Teléfonica el derecho a solicitar la revisión de la decisión del oficial examinador, el tribunal de instancia utilizó el razonamiento siguiente.

Nos parece evidente que el recurso no procede. El oficial examinador en este caso actuó en virtud de la facultad que le confiere el Reglamento de Personal para los Empleados Gerenciales de la Puerto Rico Telephone Co., adoptado por dicha compañía el 4 de abril 1983. Dispone el quinto pá-

rrafo de la sección 12.3 de dicho Reglamento que en casos como el presente "El presidente de la compañía nombrará un oficial examinador ajeno a la compañía para que celebre una vista sobre la queja del empleado". Dispone además el párrafo séptimo de dicha misma sección que "La decisión del oficial examinador será final y definitiva". Resulta claro de lo anterior que en virtud del citado Reglamento la Telefónica delegó en el oficial examinador escogido por el presidente de la compañía la facultad de tomar a nombre de la Telefónica la decisión final de la compañía en estos casos. Como consecuencia de ello la decisión del oficial examinador se convierte para todos los efectos en la decisión de la propia Telefónica. No puede entonces la Telefónica acudir en revisión al Tribunal para que aquí se revise la decisión del oficial examinador, pues ello equivale a que una agencia le pida al Tribunal que revise la decisión de la propia agencia. *Exhibit* 8, págs. 52–53.

Esta interpretación es claramente insostenible. Resolver que en ningún caso la Telefónica puede acudir a los tribunales para que se revise una determinación del oficial examinador, la coloca en una posición desventajosa. Equivale a resolver que estas decisiones sólo pueden revisarse a solicitud del empleado afectado. Se deja al patrono desprovisto de remedio, aunque la decisión sea producto de la arbitrariedad y la parcialidad, y sea claramente errónea en derecho, [4] o el producto de fraude extrínseco o intrínseco. Si le diéramos entera validez a la interpretación del ilustrado magistrado, estaríamos resolviendo que la decisión del oficial examinador, que se supone sea una persona ajena e independiente de las partes, es final y definitiva para una sola de las partes.

A tenor con los principios de revisión implícita, *Santos Rodríguez* v. *Fuentes Fluviales*, 91 D.P.R. 56, 65 (1964); *Ló-*

---

[4] Por ejemplo, que la decisión sea contraria a los principios esenciales del sistema de mérito que rige las relaciones entre la compañía y sus empleados no unionados, a tenor con la decisión en *Torres Ponce* v. *Jiménez, supra.*

*pez* v. *Muñoz, Gobernador,* 80 D.P.R. 4 (1957), y los principios de igualdad de derechos procesales, *F.S.E.* v. *Comisión Industrial,* 105 D.P.R. 261 (1976), el tribunal tiene jurisdicción para acoger la solicitud de revisión de todas las partes afectadas.

La decisión de instancia tiene el efecto de negarle capacidad para acudir a los tribunales a una parte directamente afectada por una decisión que le resulta adversa. En este caso no sólo se le impone a la compañía la obligación de pagar una cantidad determinada, también se establece una norma de derecho que regirá todas las relaciones futuras entre la compañía y sus empleados acogidos al sistema de mérito. ([5])

■ El reglamento exige que el oficial examinador sea una persona ajena a la compañía. Esto tiene el efecto de garantizar que la persona designada sea imparcial, sin atadura alguna a las partes. El oficial adjudica la controversia que se le somete. No es, como resuelve instancia, un agente o mandatario de la empresa o de la unión. Su decisión equivale a un dictamen judicial o cuasi judicial, sujeto a ser revisado.

■ Al establecer el reglamento que la decisión del oficial examinador sea final y definitiva, dicho concepto debe interpretarse como que con su decisión concluyen los procedimientos administrativos. Pero por las circunstancias señaladas, no puede tener el efecto de impedir la revisión judicial. Menos aún se le puede negar esta oportunidad a sólo una de ellas.

## II

■ Con relación a la revisión que ha iniciado el recurrido, señor Torres Solano, ante el Tribunal Superior, la Telefónica

---

([5]) No nos corresponde en este momento emitir juicio sobre la aplicabilidad y sabiduría de la doctrina adoptada por el Tribunal Supremo en el caso de *Cleveland Board of Education* v. *Loudermill,* 470 U.S. 532, 84 L. Ed. 2d 494 (1985), de que los empleados públicos tienen derecho a que se les conceda una oportunidad a una vista previa a su despido o suspensión de empleo y sueldo.

alega que debió desestimarse porque no cumplió con el término de treinta (30) días que dispone la Ley de Personal para acudir en revisión de las decisiones de J.A.S.A.P., el cual, según la parte peticionaria, es de aplicación a la Teléfonica a la luz de lo resuelto en *Torres Ponce* v. *Jiménez*, 113 D.P.R. 58 (1982).([6])

■ En el caso de *Torres Ponce* v. *Jiménez*, supra, se resolvió que por la naturaleza particular de la Telefónica ésta debería considerarse una de las agencias o instrumentalidades del Gobierno que funcionan como empresas o negocios privados, que están excluidos de la ley, pero que se les requiere que incorporen el principio de mérito en sus reglamentos de personal. 3 L.P.R.A. sec. 1338. El hecho de que la ley exija a la Telefónica que incorpore el principio de mérito en su reglamento no lleva al resultado de hacerle aplicable el término que provee la Ley de Personal para la revisión judicial de las decisiones de J.A.S.A.P. En las Reglas Aplicables a los Recursos para la Revisión de Decisiones Administrativas ante el Tribunal Superior, 4 L.P.R.A. Ap. VIII-A, R. 5, se dispone que "[e]l recurso de revisión contra decisiones, órdenes, resoluciones y providencias dictadas por organismos o funcionarios administrativos, se presentará en la secretaría del Tribunal Superior *dentro del término jurisdiccional dispuesto por ley*". (Énfasis suplido.) Por no existir una ley que fije un plazo jurisdiccional para la presentación de una revisión judicial como la del presente caso, es necesario que se le apliquen las normas de incuria. *Hull Dobbs Co.* v. *Tribunal Superior*, 82 D.P.R. 77, 79–80 (1961). Cualquier otro término debe ser específicamente aprobado por la Asamblea Legislativa.

---

([6])La Telefónica no ha cuestionado que el señor Torres Solano tenga derecho a solicitar revisión judicial de la decisión del examinador que confirma su despido. Véanse: *Santos Rodríguez* v. *Fuentes Fluviales*, 91 D.P.R. 56, 65 (1964), y *Hernández Montero* v. *Cuevas, Director*, 88 D.P.R. 785, 803 (1963).

## III

Por los fundamentos antes expuestos, *se dictará sentencia para revocar la sentencia del Tribunal Superior, Sala de San Juan, en el caso Civil Núm. 85-2337 y confirmar la resolución y orden que emitiera dicha sala en el caso Civil Núm. 85-2346.*

Los Jueces Asociados Señores Rebollo López y Hernández Denton emitieron opiniones disidentes. El Juez Asociado Señor Negrón García se inhibió.

—O—

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Me veo en la necesidad de exponer, aun cuando brevemente, mi criterio respecto a la cuestión aquí en controversia al encontrarme en la curiosa e incómoda situación de no poder suscribir ni la opinión emitida por la mayoría del Tribunal ni la opinión disidente suscrita por el compañero Juez Asociado Hernández Denton. Entiendo que ambas ponencias son erróneas; la primera de ellas en mayor grado que la segunda.

## I

La opinión mayoritaria, en primer lugar, evade enfrentarse y resolver, de una vez y para siempre, el punto verdaderamente importante y crucial que plantea el presente recurso; esto es, si los hombres y mujeres que laboran en la Puerto Rico Telephone Co. son efectivamente empleados públicos, y, como tales, tienen los mismos derechos que le garantiza nuestro ordenamiento jurídico a los empleados del Estado Libre Asociado de Puerto Rico. (¹)

---

(¹) Merece señalarse que la cuestión de si las personas que laboran para la Puerto Rico Telephone Company son o no empleados públicos trasciende la esfera de las relaciones obrero patronales. Así —entre otros y meramente a manera de ejemplo— debe destacarse la importancia de dicha determina-

En segundo lugar —aun aceptando y resignándonos a que dicha cuestión no se resuelva— la ponencia mayoritaria comete el error de no declarar nulas e inválidas las disposiciones pertinentes del Reglamento de Personal de la Telefónica, como procede en derecho hacerlo; ello por razón de que las mismas contravienen el principio de mérito y el debido proceso de ley. Por el contrario, sin fundamento jurídico de clase alguna que lo apoye, el Tribunal resuelve que un reglamento de personal que pretende regular los procedimientos disciplinarios que afectan a unos empleados de una "corporación público-privada" —por lo que se supone que el mismo "cumpla" con el principio de mérito— es totalmente válido no obstante el hecho de que el examinador, que administrativamente resuelve la controversia surgida entre el empleado y la compañía, es uno seleccionado y nombrado a la entera discreción del presidente de esta última.

## II

La Sec. 10.6 de la Ley de Personal del Servicio Público de Puerto Rico,[2] 3 L.P.R.A. sec. 1338(3) y (4), establece, en lo pertinente, que las disposiciones de la misma no serán aplicables a aquellos empleados de *agencias o instrumentalidades* del Estado Libre Asociado de Puerto Rico *que funcionen como empresas o negocios privados ni a los empleados de agencias o instrumentalidades que tengan derecho a negociar colectivamente mediante leyes especiales.* Dispone, sin embargo, que dichas agencias o instrumentalidades deberán adoptar un reglamento de personal *en que se incorpore el principio de mérito,* el cual regirá las normas de personal de dichos empleados.

---

ción en el ámbito penal. Debemos recordar que nuestro Código Penal establece delitos especiales en relación con actos cometidos por empleados públicos. Ello es una razón adicional por la cual consideramos que este Tribunal debió haber resuelto la referida cuestión.

(2) Ley Núm. 5 de 14 de octubre de 1975.

Al enfrentarnos, por primera vez, con la situación de los empleados de la Puerto Rico Telephone Co. —corporación privada *cuyos activos fueron adquiridos por una corporación pública* conocida como la Autoridad de Teléfonos— en *Torres Ponce v. Jiménez,* 113 D.P.R. 58 (1982), resolvimos que la mencionada Puerto Rico Telephone Co. era una "corporación público-privada" a los empleados de la cual, si bien no le cobijaban en toda su extensión las disposiciones de la citada Ley de Personal del Servicio Público, le era aplicable el principio de mérito en asuntos de reglamentación de personal.

En otras palabras, le aplicamos a una corporación en su origen privada —adquirida por una corporación pública— los criterios de la Sec. 10.6 de la Ley de Personal tal como si hubiera sido, desde sus inicios, una agencia o instrumentalidad del Gobierno de Puerto Rico. *Lo así resuelto conlleva, entre otras, la exigencia de que los procedimientos de administración de personal de dicha compañía cumplan con los requisitos del debido proceso de ley por cuanto éste es parte inherente del principio de mérito.* ([3])

Como se recordará, en *Torres Ponce v. Jiménez,* supra, resolvimos que los empleados de la Puerto Rico Telephone Co., *por razón de cobijarles el principio de mérito,* no podían ser despedidos de su empleo sin la celebración de una vista previa. Resulta obvio que el Tribunal, mediante la decisión que hoy emite, le está dando la espalda a lo allí resuelto; esto es, que la aplicación del principio de mérito conlleva la observancia del debido proceso de ley.

---

([3]) Expresa la Sec. 1311 del Tít. 3 de L.P.R.A., en lo pertinente, que:

"La política pública del Estado Libre Asociado de Puerto Rico en lo relativo al personal del servicio público, es la que a continuación se expresa:

"(1) Establecer *el mérito* como el principo que regirá *todo el servicio público,* de modo que sean los más aptos los que sirvan al Gobierno *y que todo empleado sea seleccionado, adiestrado, ascendido y retenido en su empleo en consideración al mérito y a la capacidad,* sin discrimen por razones de raza, color, sexo, nacimiento, edad, origen o condición social, ni por ideas políticas o religiosas." (Énfasis suplido.)

Debe mantenerse siempre presente que la esencia misma de la garantía del "debido procedimiento de ley", y, por ende, de lo que constituye un procedimiento justo e imparcial, reside precisamente en la imparcialidad y neutralidad de aquel que tiene que decidir la cuestión en controversia. *In re Murchison,* 349 U.S. 133 (1965). Esta visión, como sabemos, ha sido extendida por analogía a las determinaciones de las agencias administrativas. *Withrow* v. *Larkin,* 421 U.S. 35 (1975).

Resultan pertinentes e iluminantes las expresiones del Tribunal Supremo de Estados Unidos en *Marshall* v. *Jerrico, Inc.,* 446 U.S. 238, 242 (1980), a los efectos de que:

> *The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases.* This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, *the prevention of unjustified or mistaken deprivations* and the promotion of participation and dialogue by affected individuals in the decisionmaking process. See *Carey* v. *Piphus,* 435 U.S. 247, 259–262, 266–267 (1978). The *neutrality requirement* helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. See *Mathews* v. *Eldridge,* 424 U.S. 319, 344 (1976). At the same time, it preserves both *the appearance and reality of fairness,* "generating the feeling, so important to a popular government, that justice has been done," Joint *Anti-Fascist Committee* v. *McGrath,* 341 U.S. 123, 172 (1951) (Frankfurter, J., *concurring*), by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case *with assurance that the arbiter is not predisposed to find against him.* (Énfasis suplido.)

De acuerdo con el reglamento —dejado en pleno vigor por el Tribunal— el examinador o árbitro que decide las controversias disciplinarias que surgen entre la Puerto Rico Telephone Co. y sus empleados no sólo es seleccionado por el presidente de la misma sino que sus honorarios son fijados y satisfechos por la referida empresa. Nos preguntamos: ¿Proyecta

esa persona hacia el empleado afectado —que inclusive puede ser privado de su empleo— la apariencia de ser un examinador justo e imparcial? ¿Puede ese empleado confiar en que dicha persona no está predispuesta contra él? ¿Puede ser considerada esa persona imparcial y neutral? ¿Puede un empleado —cuyo "derecho a un empleo, esto es, a devengar ingresos y a tener una vida justa y decente, es un principio inalienable al hombre, preexistente a la más antigua de las constituciones conocidas", *Amy* v. *Adm. Deporte Hípico*, 116 D.P.R. 414, 421 (1985)— ser privado del mismo sin el debido procedimiento de ley?

### III

Somos del criterio, en resumen, que los empleados de la Puerto Rico Telephone Co. —como empleados de una corporación "público-privada" a la cual le es aplicable la citada Sec. 10.6— tienen *el derecho* a contar con un procedimiento disciplinario, a nivel administrativo, *equivalente* al que tienen los demás empleados públicos bajo las disposiciones de la Ley de Personal del Servicio Público. Por "equivalente" queremos decir que los empleados de la Telefónica tengan la oportunidad de presentar su caso ante un foro o examinador neutral e imparcial antes de acudir a los tribunales. Tal procedimiento fortalecería la confianza del empleado de que su caso no ha sido prejuzgado y le garantizaría el debido proceso a que tiene derecho. Por el contrario, permitir la existencia del procedimiento disciplinario vigente en la Telefónica propicia la desconfianza y convierte a los tribunales, para todos los efectos prácticos, en el primer foro imparcial disponible a dichos empleados. Todo esto es en detrimento de la doctrina de agotamiento de remedios administrativos y de los principios sobre los cuales descansa la doctrina de revisión judicial de decisiones administrativas.

La opinión emitida por el Tribunal tiene la consecuencia y efecto erróneo de permitir que continúe en todo su vigor un

sistema disciplinario —*el cual es el único existente a nivel administrativo para dichos empleados*— que es obviamente nulo por razón, repetimos, de no cumplir con los criterios exigidos por el principio de mérito y el debido proceso.

Ahí la razón por la cual entendemos que la opinión disidente emitida por el Juez Hernández Denton es también errónea. La misma —no obstante reconocer que los empleados de la Telefónica deben "tener el *status* de empleados públicos sujetos a los beneficios del principio de mérito"— *se limita* meramente a sostener que no se le debería permitir a la compañía revisar judicialmente la decisión administrativa por razón de que "la decisión del oficial examinador constituye la determinación final y definitiva de la [propia] empresa". Dicha opinión, sin embargo, no anularía el procedimiento disciplinario vigente en la Telefónica.

Dicha opinión disidente se olvida de que ese procedimiento disciplinario es el *único* a nivel administrativo con que cuenta el empleado de la Telefónica —a diferencia de los demás empleados públicos que con posterioridad a la decisión del jefe de agencia correspondiente pueden ir ante J.A.S.A.P.— antes de acudir en *revisión* judicial. En otras palabras, dicha opinión disidente, no obstante negarle el derecho de revisión judicial a la Telefónica, permitiría que continúe en vigor un procedimiento disciplinario que está viciado y herido de muerte por cuanto no cumple con los requisitos del debido proceso de ley al no contar con un examinador imparcial y neutral.

—O—

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton.

## I

La Puerto Rico Telephone Co. (la Telefónica) nos solicita mediante este recurso que revoquemos la sentencia del tri-

bunal de instancia en que se negaba a revisar una decisión de un oficial examinador de su empresa en un caso de destitución de un empleado. Contrario a la opinión mayoritaria, coincidimos con el ilustrado foro de instancia en que no procedía el recurso de revisión, por lo que confirmaríamos su dictamen.

Al revocar al tribunal a quo este Tribunal permite que una entidad público-privada como la Telefónica sin ninguna delegación legislativa, asuma poderes cuasi judiciales para adjudicar controversias obrero-patronales. Por entender que esta decisión es contraria a las normas de Derecho constitucional y de Derecho administrativo pautadas, tanto por este Tribunal como por el Tribunal Supremo federal, disiento.

## II

El Sr. William Torres Solano, empleado gerencial de la Telefónica, fue despedido sin vista previa por agredir al Sr. Manuel Nuño Gorbea, incurriendo así en una violación de la Regla Núm. 48, de la Sec. 10.4 del Reglamento de Personal para Empleados Gerenciales. Torres Solano solicitó al presidente de la empresa una revisión de la decisión, y el asunto fue referido a un oficial examinador, según dispone el reglamento de la empresa.

El oficial examinador nombrado por el presidente emitió una decisión que confirmaba el despido del señor Torres Solano. No obstante el oficial examinador, ordenó que le pagaran a Torres Solano el salario que le correspondía hasta la fecha en que emitió su dictamen, ya que el despido no podía ser efectivo hasta tanto se le concediera al empleado oportunidad de ser oído. Basó su dictamen en lo resuelto en *Cleveland Board of Education* v. *Loudermill,* 470 U.S. 532, 84 L.Ed.2d 494 (1985).

Inconforme con la aplicación retroactiva de *Cleveland Board of Education* v. *Loudermill,* supra, por parte de su oficial examinador, la Telefónica solicitó la revisión de su deci-

sión ante el Tribunal Superior. Éste determinó que la Telefónica estaba impedida de solicitar tal revisión, pues la decisión del oficial examinador debía entenderse como una de la propia agencia. Entendió dicho foro que el examinador era un funcionario que ejercía un poder delegado, por lo que equivaldría a que la Telefónica solicitara la revisión de sus propias decisiones:

> Resulta claro de lo anterior que en virtud del citado Reglamento la Telefónica delegó en el oficial examinador escogido por el presidente de la compañía la facultad de tomar a nombre de la Telefónica la decisión final de la compañía en estos casos. Como consecuencia de ello la decisión del oficial examinador se convierte para todos los efectos en la decisión de la propia Telefónica. No puede entonces la Telefónica acudir en revisión al Tribunal para que aquí se revise la decisión del oficial examinador, pues ello equivale a que una agencia le pida al Tribunal que revise la decisión de la propia agencia. Sentencia de instancia, pág. 2.

De esa determinación ha recurrido la Telefónica mediante *certiorari* en que alega que la decisión del foro de instancia es contraria a la doctrina de la revisión judicial implícita y que erró al negarle legitimación activa (*standing*) a la empresa. También alegan que el examinador actuó *ultra vires* y debe ser revocado. [1]

La Telefónica también recurre de una resolución del Tribunal Superior, que declara sin lugar una solicitud de desestimación de la Telefónica donde se alegaba que un recurso de revisión iniciado por el señor Torres Solano fue presentado fuera del término de treinta (30) días que provee la Ley de Personal. El tribunal concluyó que no existe ningún plazo jurisdiccional específico aplicable, y que la Telefónica no plan-

---

[1] Este señalamiento va dirigido a evaluar los méritos de la decisión del examinador, actuación que el foro de instancia no revisó. Entendemos que en esa medida tampoco debemos revisarla, pues la verdadera controversia ante nos es si la Telefónica puede solicitar la revisión de una decisión de un oficial examinador de su propia empresa.

teó oportunamente la doctrina de incuria. A solicitud de la Telefónica consolidamos ambos recursos.

## III

La Autoridad de Teléfonos fue creada como una corporación pública e instrumentalidad del Estado Libre Asociado con el propósito de adquirir y administrar las facilidades de comunicación en todo Puerto Rico, incluso a la Puerto Rico Telephone Co., una subsidiaria de la International Telephone and Telegraph Corp., Ley Núm. 25 de 6 de mayo de 1974 (27 L.P.R.A. secs. 401–424). Como la Puerto Rico Telephone Co. era una corporación privada organizada bajo las leyes del estado de Delaware, se creó una situación particular donde una entidad de origen privado fue adquirida por una empresa del Estado.

Al confrontarnos con esta situación en *Torres Ponce* v. *Jiménez*, 113 D.P.R. 58 (1982), resolvimos que la peticionaria tenía el *status* de una corporación público-privada por "las responsabilidades públicas que su organización conlleva". (²) Ibíd., pág. 65. Indicamos, además, que no obstante estar organizada como corporación privada, existía "un desdoblamiento de personalidad público-privada con el fin de lograr rendir un mejor servicio público y lograr unos propósitos". Ibíd., pág. 65. Se concluyó, de conformidad con dicho análisis, que la Telefónica debía considerarse como una de las agencias o instrumentalidades públicas que funcionan como empresas privadas y están excluidas de la aplicación de la Ley de Personal y de la jurisdicción apelativa de la Junta de Apelaciones del Sistema de Administración de Personal (J.A.S.A.P.), pero que según la ley debían promulgar un reglamento que incorporase el principio de mérito para regir las normas de personal de los empleados no unionados. Véase Ley de Personal del Servicio Público de Puerto Rico, Núm. 5 de 14 de octubre

---

(²)Véase también, *P.R. Tel. Co.* v. *Rivera*, 114 D.P.R. 360 (1983).

de 1975, Sec. 10.6 (3 L.P.R.A. sec. 1338). (3) En esta medida, estos empleados no unionados de la Telefónica deben tener el *status* de empleados públicos, sujetos a los beneficios del principio de mérito.

De conformidad con lo interpretado en el caso de *Torres Ponce* v. *Jiménez*, supra, la Telefónica aprobó el Reglamento de Personal para los empleados gerenciales que incorpora el principio de mérito y donde se establece un procedimiento disciplinario. El reglamento dispone que un empleado afectado por una medida disciplinaria podrá apelarla inicialmente ante el supervisor inmediato, luego al Director de Relaciones de Empleados y en última instancia al Presidente de la Telefónica, quien tiene el poder de nombrar y destituir a los empleados de la empresa.

Una vez se le solicita la revisión al presidente, el reglamento dispone que éste nombrará un oficial examinador para que celebre una vista sobre la queja del empleado. En la vista el empleado tendrá derecho a estar representado por abogado, se tomará récord taquigráfico y el oficial examinador designado deberá realizar determinaciones de hecho y conclusiones de derecho. Art. 12, Sec. 12.3 del reglamento. También se dispone que la decisión del examinador "será final y definitiva".

Este Reglamento de Personal fue aprobado por el entonces Presidente de la Puerto Rico Telephone Co. y por el Vicepresidente de Relaciones de Empleados. Mediante el mismo, el poder nominador de la Telefónica, su presidente, delegó sus facultades de suspender y cesantear empleados en el Director de Relaciones de Empleados y en el oficial examinador, según

---

(3) Contrario a lo señalado por la peticionaria, su obligación de aprobar un reglamento de personal que adopte el principio de mérito no surge de la decisión de *Torres Ponce* v. *Jiménez*, 113 D.P.R. 58 (1982). Allí resolvimos que la Ley de Personal le requería tal reglamento. Véanse: *Reyes Coreano* v. *Director Ejecutivo*, 110 D.P.R. 40 (1980), y *Laboy* v. *E.L.A.*, 115 D.P.R. 190 (1984).

requerido por el reglamento, cuando el empleado agraviado apela ante el presidente. Para garantizar mayor pureza e imparcialidad en el procedimiento, el reglamento requiere que se designe como oficial examinador a una persona que no sea empleado ni esté vinculada económicamente con la empresa.

Aunque el oficial examinador debe ser alguien que no esté asociado con la empresa, sus facultades decisorias son derivadas del poder del presidente(⁴) y actúa con un mandato expreso de éste, quien lo nombra cada vez que se solicita la revisión de una sanción disciplinaria.

La peticionaria sostiene, como parte de sus argumentos por los cuales debe proceder la revisión judicial, que la función e independencia de la Junta de Apelaciones del Sistema de Personal (J.A.S.A.P.) es comparable con la de su oficial examinador. No resisten comparación. La primera funciona enteramente independiente de la Oficina Central de Personal, de las agencias que componen el sistema central y de los administradores individuales. Está compuesta por tres miembros que son nombrados por el Gobernador con el consejo y consentimiento del Senado. Uno de los miembros deberá ser abogado y todos deben ser personas de reputado conocimiento e interés en el campo de la administración de personal en el servicio público y en la aplicación del principio de mérito. Sus nombramientos serán por términos fijos, ocuparán sus cargos a tiempo completo y su remuneración está fijada por ley. Finalmente, sus facultades decisorias como cuerpo adjudicativo han sido expresamente otorgadas por ley. 3 L.P.R.A. secs. 1381–1395.

Sin embargo, la Asamblea Legislativa no le delegó a J.A.S.A.P. la jurisdicción apelativa de las decisiones del poder

---

(⁴)Tanto la Ley de Personal, 3 L.P.R.A. sec. 1336(4), como el Reglamento de Personal: Áreas Esenciales al Principio de Mérito, Sec. 9-2, disponen que las destituciones de empleados se efectuarán por la autoridad nominadora, por lo que la decisión del examinador tiene que derivar su validez de tal facultad.

nominador en las corporaciones públicas que no están dentro del sistema de personal. 3 L.P.R.A. sec. 1394. Tampoco delegó esos poderes cuasi judiciales a ninguna otra entidad gubernamental.

Por varias décadas este Tribunal ha autorizado delegaciones del poder adjudicativo a organismos administrativos. *López* v. *Junta Planificación*, 80 D.P.R. 646, 661 (1958). En *Hernández Denton* v. *Quiñones Desdier*, 102 D.P.R. 218, 223 (1974), afirmamos que una "[p]arte esencial de reformas a los sistemas de justicia en muchas jurisdicciones . . . es el reconocimiento de que organismos no judiciales deben atender asuntos que hasta cierto tiempo se consideraron de la competencia exclusiva de los tribunales". Véanse también: *Murray's Lessee* v. *Hoboken Land and Improvement Co.*, 59 U.S. (18 How.) 272, 284 (1855); *Crowell* v. *Benson*, 285 U.S. 22 (1932); *Northern Pipeline Co.* v. *Marathon Pipe Line Co.*, 458 U.S. 50 (1982); B. Schwartz, *Administrative Law Cases During 1982*, 35 Ad. L. Rev. 147 (1983); H. P. Monaghan, *Marbury and the Administrative State*, 83 Colum. L. Rev. 1 (1983).

Aunque los tribunales han aceptado que esta delegación no viola la cláusula de separación de poderes, han requerido que se haga expresamente por una ley que contenga unas normas adecuadas y que provea para una revisión judicial. Véanse: *Crowell* v. *Benson*, supra; B. Schwartz, *Administrative Law*, Toronto, Little, Brown & Co., 1976, Sec. 17; 1 *Davis, Administrative Law Treatise* Sec. 2.12 (1958); M. Forkosch, *A Treatise On Administrative Law*, Indianapolis, Bobbs-Merrill Co., 1956, Cap. 2, Sec. 42.

Un cuidadoso estudio del historial y la legislación que crea la Autoridad de Teléfonos, 27 L.P.R.A. sec. 401 *et seq.*, revela que en ningún lugar se incluyó una disposición que permita que esta corporación pública posea poderes cuasi judiciales para adjudicar controversias como las de este caso. Tampoco fue expresamente autorizada a delegar estos poderes a una

corporación público-privada como la Puerto Rico Telephone Co. En vista de este historial, en estricto derecho no se puede aceptar la tesis de la Telefónica que mediante un reglamento se puede delegar a un examinador un poder cuasi judicial que nunca fue conferido por la Asamblea Legislativa.

Por estas razones disiento de la conclusión principal de la opinión mayoritaria en que la decisión del examinador "equivale a un dictamen judicial o cuasi judicial, sujeto a ser revisado". Reconocerle a una agencia este poder cuasi judicial mediante un dictamen judicial, constituye una apropiación de unas facultades que constitucionalmente están explícitamente otorgadas a la Asamblea Legislativa. Como intérpretes finales de la Constitución, debemos ser particularmente cuidadosos de otorgarnos facultades de las otras Ramas. De lo contrario, alteraríamos el delicado balance que siempre ha guiado nuestros pronunciamientos sobre la cláusula de separación de poderes.

El examinador de la Telefónica tiene solamente los poderes que válidamente tenía el Presidente de la Telefónica y a éste nunca le fue expresamente otorgado el poder de adjudicar las controversias obrero-patronales. Su poder es exclusivamente ejecutivo de nombrar, suspender, cesantear empleados. Mediante reglamento creó una estructura decisional para descargar esta responsabilidad gerencial. En este esquema administrativo al examinador le fueron delegados únicamente poderes ejecutivos, independientemente del mecanismo utilizado para cumplir sus encomiendas.

Precisamente por su poder limitado es que no se ha desarrollado una estructura de oficiales examinadores con nombramientos permanentes que no estén sujetos a cambios por el poder nominador. Del expediente de este caso se desprende que la práctica ha sido nombrar a personas que ni siquiera son empleados públicos. De hecho, el mecanismo actual de nominación permite que el presidente nombre a aquellos examinadores cuyas decisiones no son contrarias a la empresa.

En estas circunstancias, el oficial examinador no tiene la independencia ni los poderes necesarios para comparar su trabajo al de un organismo como J.A.S.A.P. (5)

En virtud del reglamento aprobado por la Telefónica la decisión del oficial examinador constituye la determinación final y definitiva de la empresa. Adquiriendo su decisión esta finalidad, no puede la peticionaria pretender ir contra sus propias normas mediante el recurso de revisión judicial. *García* v. *Adm. del Derecho al Trabajo*, 108 D.P.R. 53, 55 (1978); *Hernández García* v. *J.R.T.*, 94 D.P.R. 22, 29 (1967). Esto no impide que la Telefónica invoque la defensa de fraude, al negarse a poner en vigor la decisión del examinador.

Tampoco imposibilita que la empresa, al amparo de sus facultades, enmiende su Reglamento de Personal para otorgarle al presidente el derecho a modificar o revocar la decisión del oficial examinador o a limitar sus funciones sólo a recibir la prueba y hacer recomendaciones.

## IV

Por otro lado entendemos que a una "acción judicial" donde un empleado de la Telefónica cuestiona su despido, no le es aplicable el término de treinta (30) días que provee la Ley de Personal.

---

(5) Este caso ilustra una deficiencia de la actual Ley de Personal, que al excluir a las corporaciones públicas de su total aplicación, se les privó de un foro administrativo especializado e imparcial, como J.A.S.A.P., que pudiera revisar las decisiones que afecten a los empleados que les aplica el principio de mérito.