EL PUEBLO DE PUERTO RICO, demandante y peticionario, *v.* SAULO HERNÁNDEZ TORRES y HENRY BARREDA, JR., demandados y recurridos; PUERTO RICO TELEPHONE COMPANY, *amicus curiae.*

*Número:* CE-87-296     *Resuelto:* 2 de marzo de 1990

---

*Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General, y Josefa A. Román García, Procuradora General Auxiliar,* abogados de El Pueblo; *José Davison Lampón, Manuel Torres Delgado* y *Roberto De Jesús Cintrón,* abogados de los recurridos; *José Luis Verdiales Morales* y *Jay A. García Gregory,* de *Fiddler, González & Rodríguez,* abogados de la Puerto Rico Telephone Company, *amicus curiae.*

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

El presente caso plantea la interrogante de si las personas que trabajan en la Puerto Rico Telephone Company (en adelante Telefónica) están comprendidas dentro del término "[f]uncionario o empleado público", según definido por el Art. 7(16) del Código Penal, 33 L.P.R.A. sec. 3022(16), y si en consecuencia les son aplicables las disposiciones de

dicho código relativas a los delitos contra la función pública, Arts. 200–215 (33 L.P.R.A. secs. 4351–4366).(1)

En cuanto a la referida definición del Art. 7(16), *supra*, ésta dispone lo siguiente:

> . . . *Funcionario o empleado público.*—Toda persona que ejerza un cargo o desempeñe una función retribuida o gratuita, permanente o temporal, en virtud de cualquier tipo de nombramiento, contrato o designación, para la rama legislativa, ejecutiva o judicial del Estado Libre Asociado de Puerto Rico, o en cualquiera de sus municipios, agencias o corporaciones públicas, subdivisiones políticas y demás dependencias públicas.

Por su parte, de entre las disposiciones que regulan los delitos contra la función pública, a continuación transcribimos los artículos pertinentes a los hechos en el caso de autos. Éstos disponen como sigue:

> Toda omisión voluntaria en el cumplimiento de un deber impuesto por la ley o reglamento a un funcionario o empleado público, o persona que desempeñare algún cargo de confianza o empleo público de no existir alguna disposición señalando la pena correspondiente a dicha omisión, se penará con reclusión que no excederá de seis meses o multa que no excederá de quinientos dólares o ambas penas a discreción del Tribunal. Art. 214 (33 L.P.R.A. sec. 4365).

> Todo funcionario o empleado público que obstinadamente descuidare cumplir las obligaciones de su cargo o empleo, o que infringiere cualquiera disposición legal relativa a sus obligaciones o las del cargo o empleo, de no existir alguna disposición especial señalando la pena correspondiente, será sancionado con pena de reclusión que no excederá de seis meses o

---

(1) Dada la naturaleza especial de los delitos contra la función pública, en la mayor parte de los casos, para que se puedan imputar algunos de éstos, es medular que el acusado sea funcionario o empleado público. Esto es así ya que "[e]sta sección tipifica los delitos que violan el orden moral y los valores fundamentales de la administración pública puertorriqueña". *Pueblo v. Bigio Pastrana*, 116 D.P.R. 748, 755 (1985).

multa que no excederá de quinientos dólares, o ambas penas a discreción del tribunal. Art. 215 (33 L.P.R.A. sec. 4366).

Esbozadas las disposiciones estatutarias que gobiernan la determinación de este recurso, examinemos los hechos que dan lugar a la controversia planteada.

## I

El 12 de junio de 1985 se presentaron en el Tribunal de Distrito, Sala de Bayamón, denuncias contra Henry Barreda, Jr. y Saulo Hernández Torres, aquí recurridos. Se les imputó violaciones a los Arts. 214 y 215 del Código Penal, *supra*, los cuales tipifican respectivamente como delito la omisión y/o negligencia en el cumplimiento del deber.

En cuanto al acusado Barreda, se alegó en la denuncia que éste de forma ilegal, maliciosa, voluntaria y con intención criminal omitió voluntariamente el cumplimiento de un deber que como funcionario o empleado público de la Telefónica le imponía la ley o el reglamento. La conducta acriminada consistió en violar la práctica Núm. FI-601 establecida por la Telefónica, al permitir el reemplazo masivo no autorizado de líneas negras o bajantes y certificar como correctas facturas por trabajos no realizados, lo cual tuvo como consecuencia que terceras personas defraudaran a la Telefónica. Todo esto lo hizo en concierto y de común acuerdo con otros funcionarios de la Telefónica.

Al acusado Hernández Torres, por su parte, se le imputaron básicamente los mismos hechos con la variante de que obstinadamente descuidó cumplir con las obligaciones de su cargo o empleo.

Ambos acusados presentaron, primero ante el Tribunal de Distrito y luego ante el Tribunal Superior, una solicitud de desestimación mediante la cual alegaron que la Telefónica es una corporación privada y, por lo tanto, no son de aplicación los referidos artículos del Código Penal, ya que éstos inciden

únicamente sobre personas que son empleados o funcionarios públicos. El planteamiento, aunque no fue acogido por el Tribunal de Distrito, encontró respaldo en el Tribunal Superior. Éste concluyó que la Telefónica es una corporación privada, organizada bajo las Leyes de Delaware, y puesto que la cuestión planteada es de carácter penal, ello lo distingue de los casos de *Torres Ponce v. Jiménez*, 113 D.P.R. 58 (1982); *P.R. Tel. Co. v. Rivera*, 114 D.P.R. 360 (1983), y *Torres v. P.R. Telephone Co.*, 118 D.P.R. 198 (1987). En la alternativa también señaló que aunque las corporaciones público-privadas estuvieran incluidas en la definición del Código Penal, habría que concluir que el estatuto resulta vago e impreciso en tanto no define con claridad qué personas están incluidas en el mismo.

De tal determinación recurre el Procurador General mediante petición de *certiorari*. Decidimos revisar y expedimos el recurso.

## II

Aunque en más de una ocasión han llegado ante nuestra consideración distintas controversias derivadas de la naturaleza particular de la Telefónica, el planteamiento que hoy se nos presenta varía de lo hasta ahora resuelto, ya que requiere nuestra incursión en el ámbito del derecho penal.

■ Sin embargo, es preciso aclarar que la diferencia de materias no justifica que por ello debamos ignorar o descartar lo resuelto hasta el presente conforme a controversias de índole civil. Después de todo, el derecho civil y el derecho penal no están totalmente desligados el uno del otro. Cuando en materia penal se utilizan conceptos de derecho civil para tipificar un delito hay que recurrir a éste para interpretar el ámbito y la cubertura de la prohibición. En el caso de autos específicamente, si los empleados de la Telefónica están o no incluidos dentro de la definición que establece el Art. 7(16)

del Código Penal, *supra*, depende de la naturaleza de la Telefónica, según ésta quedó plasmada en su estatuto orgánico y en la jurisprudencia interpretativa del mismo. Con esto en mente, pasemos ahora a analizar la ley y jurisprudencia sobre esta materia.

En *Torres Ponce v. Jiménez*, supra, expresamos que la Telefónica es una "corporación público-privada." Este término, nuevo en nuestra jurisprudencia, se incorporó para distinguir las corporaciones de emisión de acciones organizadas al amparo de las leyes de corporaciones privadas, las cuales son controladas total o parcialmente por el Gobierno, de aquellas otras que son creadas por estatuto, como serían las corporaciones públicas puras y las agencias o departamentos del Gobierno. Esta distinción, sin embargo, no descartó la condición pública de dichas corporaciones aun frente a los argumentos de que por haberse incorporado bajo las leyes de un estado, éstas debían considerarse como corporaciones privadas. Por el contrario, se dijo que "[a] pesar de que se aproximan al *status* de personas legales privadas, *esta característica no puede tener supremacía sobre las responsabilidades públicas que su organización conlleva*". (Énfasis suplido.) Íd., pág. 65.

En la referida opinión se expresó, además, que si bien estas corporaciones deben funcionar como una corporación privada, esto sería a los únicos fines de lograr unos propósitos, los cuales en el caso de la Telefónica se señalaron en la misma opinión y aquí mencionamos más adelante. Además, y con tono de conclusión, la opinión termina acotando que de acuerdo con el caso en particular se considerará a la Telefónica como corporación pública o como corporación privada.

Esta última expresión con gran probabilidad es la causa de que con frecuencia exista incertidumbre en cuanto a cómo tratar a la corporación frente a las distintas situaciones que se presentan. Por tal razón, nos parece apropiado delimitar

el ámbito de la expresión como paso previo y necesario antes de disponer de la controversia principal. En tal caso, resulta imperativo aclarar las circunstancias bajo las cuales puede considerarse a la corporación como pública, antes de decidir si sus empleados deben considerarse parte de la mencionada definición del Código Penal.

Para lograr nuestro propósito nos parece que el punto de partida, al momento de evaluar el carácter de la Telefónica de acuerdo con determinada controversia, debe estar en conformidad con las razones por las cuales el legislador favoreció adquirir la corporación para el Pueblo de Puerto Rico. En este caso, el análisis del historial legislativo del estatuto en cuestión revela que el propósito del legislador al adquirir la corporación fue lograr un servicio de calidad adecuado, ya que, de acuerdo con varios estudios, se había concluido que la comunicación telefónica de Puerto Rico no se había desarrollado a la par con el crecimiento económico y poblacional del país.

Para enfrentar el referido problema, mediante la ley que crea la Autoridad de Teléfonos, Ley Núm. 25 de 6 de mayo de 1974 (27 L.P.R.A. sec. 401 *et seq.*), se le confirió a dicha entidad la capacidad para adquirir todas las acciones de la entonces corporación privada, Puerto Rico Telephone Company.

Específicamente, la Exposición de Motivos de la ley expresa que:

> Esta Asamblea Legislativa reitera la necesidad de un sistema eficiente de comunicaciones para el continuado desarrollo económico y social de Puerto Rico y para el bienestar y tranquilidad de los puertorriqueños. *Esta Asamblea Legislativa entiende que para lograr este fin es necesario que las "facilidades de comunicación" de Puerto Rico . . . sean poseídas y operadas por el Estado Libre Asociado de Puerto Rico.* (Énfasis suplido.) 1974 Leyes de Puerto Rico (Parte 1) 142, 144.

Según se puede apreciar de estas expresiones, la Telefónica, más que un apéndice de la Autoridad de Teléfonos, se convirtió en el medio mediante el cual se habrían de hacer viable las funciones que el legislador impuso a la Autoridad de Teléfonos en su estatuto habilitador.

De otra parte, en la Exposición de Motivos de la Ley Núm. 92 de 4 de junio de 1983, la cual permite al Contralor de Puerto Rico fiscalizar las finanzas de la Telefónica, se señaló entre otras cosas que:

La facultad y obligación constitucional del Contralor de Puerto Rico *cubre a todos los departamentos, agencias e instrumentalidades del Estado,* así como también a sus municipios. Dentro de nuestro régimen constitucional no existe estructura gubernamental alguna que se encuentre exceptuada de la intervención y fiscalización del Contralor de Puerto Rico.

*El historial de la legislación que conduce a la eventual adquisición de la Puerto Rico Telephone Company es completamente claro en cuanto a la intención de establecer como política pública que dicha empresa, la Puerto Rico Telephone Company, una vez adquirida por el Gobierno, fuese operada como una propiedad o instrumentalidad del Estado . . . .*

Por tal motivo, es la intención de la Asamblea Legislativa de Puerto Rico *reiterar la condición de instrumentalidad pública de la Puerto Rico Telephone Company una vez ésta fue adquirida por el Gobierno del Estado Libre Asociado de Puerto Rico . . . .* (Énfasis suplido.) 1983 Leyes de Puerto Rico 238–239.

■ La consideración de las expresiones anteriores, según éstas se manifiestan en los referidos estatutos, claramente establecen la visión y el propósito de la Legislatura al proveer para la adquisición de la Telefónica. Esto se traduce en la intención inequívoca de que ésta fuera una instrumentalidad del Estado revestida con la obligación de cumplir una función de gran interés público. Asimismo, tampoco podemos obviar el importantísimo papel que la comunicación telefónica desempeña hoy en todos los renglones de nuestro

país, sean éstos económicos, políticos, sociales, comerciales, de seguridad, de salud, entre otros. En vista de todo lo anterior, no podemos decir nada más apropiado que lo que recientemente expresamos ante una situación similar en *McCrillis v. Aut. Navieras de P.R.*, 123 D.P.R. 113, 129 (1989), "[n]o *debemos sobreponer la forma a la sustancia*". (Énfasis suplido.) Además, "[p]ara interpretar correctamente una ley, debe buscarse la intención legislativa, no en una frase aislada o en una de sus secciones, sino en el contexto de todo el estatuto, teniendo en cuenta el propósito perseguido por el legislador. *Pueblo v. De Jesús*, 70 D.P.R. 37, 42 (1949)". R. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, pág. 484.

En conclusión, la Telefónica, vista dentro del contexto de todo el proceso y los propósitos de su adquisición, debe considerarse una dependencia pública del Estado Libre Asociado de Puerto Rico, independientemente de la reserva de carácter privado que para unos fines específicos se haya mantenido.

## III

De la opinión *Torres Ponce v. Jiménez*, supra, surgen con meridiana claridad las razones por las cuales se mantuvo el carácter privado de la corporación, cosa que como veremos no alteró en nada la contraparte de su aspecto público.

De la citada opinión se desprende que mediante la conservación del carácter privado, aparte de intentar flexibilizar la planificación y estructuración de la corporación para así poder ofrecer un mejor servicio, también se perseguía un fin de orden económico: lograr asegurar la tributabilidad de los intereses que se pagaran sobre ciento veinte millones de dólares ($120,000,000) en obligaciones vigentes (*debentures*). Un análisis del historial legislativo del estatuto en cuestión

demuestra que éste fue el propósito. Véase, también, *Torres Ponce v. Jiménez*, supra, págs. 67–68.

En síntesis, la Telefónica debe considerarse como una entidad cuya naturaleza es mixta o dual y, en consecuencia, según sea la situación que se tenga ante sí, ha de variar la forma en que se ha de tratar. No obstante, las situaciones bajo las cuales se considere como empresa privada son aquellas donde hacer lo contrario afectaría los propósitos que tuvo el legislador al aprobar el estatuto viabilizador. Esto es, el trato que como corporación privada reciba esta entidad ha de ser a los únicos fines de facilitar el fin económico que se persigue y su funcionamiento independiente con miras a ofrecer un mejor servicio. Por ese medio, según se hizo constar específicamente en *Torres Ponce v. Jiménez*, supra, se permite que la corporación no se vea obligada a esperar por asignaciones anuales de fondos, ya que de esa forma la corporación produce y genera su propio capital, puede reinvertir el sobrante y ahorrar o reducir las tarifas de los consumidores. Fuera de los propósitos aquí mencionados, resulta lógico pensar que para cualquier otro evento su trato ha de ser cónsono con su carácter público.

En vista de lo anterior, en todo caso donde la consideración de la Telefónica como corporación privada no sea necesaria para promover los propósitos por los cuales se retuvo el carácter privado, procede resolver el asunto de acuerdo con las disposiciones aplicables a las corporaciones públicas.

Precisamente, conforme al carácter público de esta entidad y a los principios de política pública de la Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1301 y ss.), Ley de Personal del Servicio Público de Puerto Rico, este Tribunal reconoció en *Torres Ponce v. Jiménez*, supra, la obligación de la Telefónica de implantar un sistema de mé-

rito para sus empleados no unionados según se les exige a las corporaciones públicas propiamente. De igual modo, en *P.R. Tel. Co. v. Rivera*, supra, se reconoció la validez de la intervención y fiscalización del Contralor de Puerto Rico en sus finanzas,[2] y en *Torres v. P.R. Telephone Co.*, supra, pág. 203, reiteramos que debido a la naturaleza particular de la Telefónica "ésta deb[e] considerarse [como] una de las agencias o instrumentalidades del Gobierno que funcionan como empresas o negocios privados . . .".

Todo lo anterior apunta a que si bien la Telefónica no es una corporación pública propiamente esto, sin embargo, no altera su finalidad de instrumentalidad pública adquirida con fondos del Gobierno para cumplir un propósito de servicio público esencial. *Cf. McCrillis v. Aut. Navieras de P.R.*, supra.

## IV

Aclarado el aspecto del reconocido carácter público de la Telefónica y las circunstancias bajo las cuales le ha sido de aplicación dicho carácter, no vemos que exista argumento razonable alguno que impida concluir que su personal sea considerado como empleados o funcionarios públicos de acuerdo con la definición que a tales efectos brinda el Código Penal nuestro. Después de todo, si el principio de mérito le es aplicable a los empleados de la Telefónica, resulta lógico que también su conducta esté sujeta a las normas que rigen los ideales de servicio público y, por ende, a las disposiciones que protegen la función pública.

Cabe señalar, además, que en el presente caso la identificación de los empleados de la Telefónica como empleados pri-

---

[2] Poco tiempo después de la opinión de *P.R. Tel. Co. v. Rivera*, 114 D.P.R. 360 (1983), mediante la Ley Núm. 92 de 4 de junio de 1983 (27 L.P.R.A. sec. 409), la Asamblea Legislativa reconoció expresamente la función fiscalizadora del Contralor de Puerto Rico en relación con la Puerto Rico Telephone Company.

vados no adelanta los propósitos que hemos mencionado para los cuales se retuvo en parte la personalidad privada de la corporación. En otras palabras, no hay razón para decir que la inclusión de los empleados de la Telefónica dentro de la susodicha definición altera o entorpece los propósitos del legislador relativos al aspecto funcional y económico de la corporación.

■ Por otra parte, el hecho de que éstos no son parte del sistema central de personal, no altera su condición de empleados públicos. La Ley de Personal del Servicio Público de Puerto Rico expresamente excluye de la aplicación de la ley a todos los empleados de corporaciones públicas. Sin embargo, esto no significa que sean empleados privados. Por el contrario, del lenguaje de la referida disposición lo que se desprende es que aunque éstos se consideran empleados públicos, por razones de política pública se decidió no someterlos a la aplicación detallada de la ley, aunque sí a los principios de mérito. Véanse: *Reyes Coreano v. Director Ejecutivo*, 110 D.P.R. 40 (1980); *Laboy v. E.L.A.*, 115 D.P.R. 190 (1984).

■ En cuanto al Art. 7(16) del Código Penal, *supra*, se refiere, éste define ampliamente el término "funcionario o empleado público". Ante esta situación, se hace innecesario que tengamos que recurrir a intrincados procesos de interpretación para determinar si dentro de la definición están incluidos los empleados de la Telefónica. El estatuto dista mucho de ser vago o impreciso. Por el contrario, la definición de "funcionario o empleado público" es abarcadora y permite que en la situación particular de la Telefónica se pueda exigir a sus empleados el mismo celo que se requiere de los demás empleados públicos en cuanto a la puridad de sus servicios.

Aunque en el historial legislativo del Código Penal no aparecen debates referentes al citado Art. 7(16), el texto del

proyecto original se amplió. La definición de "funcionario o empleado público" que originalmente aparecía en el proyecto disponía lo siguiente:

A los efectos de la ley penal se consideran funcionarios públicos a todos los que ejercen un cargo o desempeñan una función retribuida o gratuita, permanente o temporaria, de carácter legislativo, ejecutivo o judicial en el Estado Libre Asociado de Puerto Rico, en cualesquiera de sus municipios o en cualquier agencia, junta o corporación pública. Proyecto de Código Penal para Puerto Rico, redactado por Francisco Pagán Rodríguez, LL.D., New Hampshire, Equity Pub., 1967, Art. 267, pág. 92.

La ampliación agregó lo siguiente: *"en virtud de cualquier tipo de nombramiento, contrato o designación"*, y al final se añade *"subdivisiones políticas y demás dependencias públicas"*. (Énfasis suplido.) Art. 7(16) del Código Penal, *supra*. Resulta evidente, pues, que la intención legislativa fue abarcar a toda aquella persona que de alguna forma o capacidad intervenga en llevar a cabo la gestión pública. Se incorporó a la definición a toda persona que aun mediante servicios gratuitos, permanentes o temporales advinieran en contacto con alguna de las distintas facetas del funcionamiento del quehacer público.

Por otra parte, hay que tener presente que "'[l]a regla . . . de que los estatutos penales deben interpretarse restrictivamente, no exige que a las palabras de un estatuto deba dárseles su significado más limitado o que deba hacerse caso omiso de la evidente intención del legislador'". *Pueblo v. Hernández Colón*, 118 D.P.R. 891, 903 (1987). Por el contrario, "[u]na vez descubierto el deseo y voluntad del legislador, el fin de la interpretación ha sido logrado y no resulta necesario aplicar ninguna regla de hermenéutica, porque éstas no son sino una ayuda para determinar esa voluntad legislativa que se busca". Bernier y Cuevas Segarra, *op. cit.*, págs. 241–242.

Acorde con todo lo antes discutido, no procede por lo tanto el argumento de los acusados recurridos de que por no mencionarse específicamente a las corporaciones público-privadas en la definición del citado Art. 7(16) del Código Penal, no se les puede aplicar las disposiciones relativas a los empleados públicos. Por ende, tampoco existe impedimento alguno que los excluya de la aplicación de las disposiciones relativas a los delitos contra la función pública.(8)

Por todo lo antes expuesto, *se dictará sentencia mediante la cual se revoque la resolución dictada el 17 de marzo de 1987 por el Tribunal Superior, Sala de Bayamón, y se devuelva el caso al tribunal de instancia para que continúen los procedimientos compatibles con esta opinión.*

El Juez Presidente Señor Pons Núñez emitió opinión disidente. El Juez Asociado Señor Rebollo López emitió voto particular de conformidad.

—O—

Opinión disidente emitida por el Juez Presidente Señor Pons Núñez.

Aun cuando la conclusión del Tribunal en el caso de autos, en cuanto establece que los empleados de la Puerto Rico Telephone Company (la Telefónica) son empleados o funcionarios públicos, pueda ser la más acertada jurídicamente y la más fiel al espíritu de la Ley Núm. 25 de 6 de mayo de 1974

---

(8) Cabe señalar que la determinación a la que hoy llegamos no puede clasificarse como una interpretación imprevisible o sorpresiva, o que antes de ella existiera algún estado de derecho que razonablemente justificara una conclusión diferente. Todo lo contrario. La opinión de *Torres Ponce v. Jiménez*, 113 D.P.R. 58 (1982), sentó bases claras tanto respecto al carácter público de la corporación como al de sus empleados. Interpretado en su justa perspectiva, no debió haber dudas de que los aquí acusados debían haberse considerado como empleados públicos a los fines del Código Penal.

(27 L.P.R.A. sec. 401 *et seq.*), que permitió que la Telefónica pasara a ser poseída y operada por el Estado Libre Asociado de Puerto Rico,[1] no estamos de acuerdo con la aplicación de tal determinación a los hechos del presente caso y por eso disentimos.

Este Tribunal ha tenido la necesidad de expresarse en varias ocasiones sobre diferentes controversias relacionadas con la peculiar naturaleza de la Telefónica. *Torres Ponce v. Jiménez*, 113 D.P.R. 58 (1982); *Torres v. P.R. Telephone Co.*, 118 D.P.R. 198 (1987). No obstante, este Tribunal nunca antes se había manifestado en relación con el carácter público o privado de los empleados de la Telefónica.[2] Más aún, la misma opinión mayoritaria en la pág. 571 del presente caso, reconoce que la Telefónica "debe considerarse como una entidad cuya naturaleza es mixta o dual y, en consecuencia, según sea la situación que se tenga ante sí, ha de variar la forma en que se ha de tratar". Entendemos que la opinión mayoritaria es buen ejemplo de que la naturaleza pública o privada de la Telefónica no es un asunto de fácil determinación o uno que pueda tratarse en términos genéricos. En consecuencia, no nos parece razonable pretender que los em-

---

[1] Nos parece que resultaría más adecuado que la determinación que al respecto corresponda se haga dentro de un procedimiento en que la Puerto Rico Telephone Company sea parte y pueda ilustrar a este Tribunal en cuanto a todos los aspectos y las consecuencias de esa determinación genérica. Véase esc. 2.

[2] En *Torres v. P.R. Telephone Co.*, 118 D.P.R. 198, 204–205 esc. 1 (1987), el Juez Asociado Señor Rebollo López, con ánimo previsor, nos alertó sobre la importancia de tal determinación en el ámbito del derecho penal, y a esos efectos se expresó así:

"Merece señalarse que la cuestión de si las personas que laboran para la Puerto Rico Telephone Company son o no empleados públicos trasciende la esfera de las relaciones obrero patronales. Así —entre otros y meramente a manera de ejemplo— debe destacarse la importancia de dicha determinación en el ámbito penal. Debemos recordar que nuestro Código Penal establece delitos especiales en relación con actos cometidos por empleados públicos. Ello es una razón adicional por la cual consideramos que este Tribunal debió haber resuelto la referida cuestión."

pleados de la Telefónica, con anterioridad a esta decisión, se sintieran debidamente informados sobre su carácter de empleados públicos. En esa medida, consideramos que la aplicación de la doctrina mayoritaria a los hechos de este caso es contraria al principio de la legalidad establecido en el Art. 8 de nuestro Código Penal, 33 L.P.R.A. sec. 3031. El principio de legalidad, el cual es parte del derecho constitucional a un debido proceso de ley, está plasmado en nuestro ordenamiento en el mencionado Art. 8 del Código Penal, el cual dispone:

> No se instará acción penal contra persona alguna por un hecho que no esté expresamente definido por la ley como delito, ni se impondrán penas o medidas de seguridad que la ley no hubiere previamente establecido.
>
> No se podrán crear por analogía delitos, penas, ni medidas de seguridad.

"El artículo, en tanto requiere que los hechos por los cuales se inste acción penal contra una persona estén expresamente definidos por ley, recoge la prohibición de las leyes vagas. Esta prohibición responde al requisito de que las leyes deben dar un aviso adecuado de las consecuencias penales de la conducta que ordenan o proh[í]ben . . . . El examen judicial a utilizar para determinar si una ley es vaga será, si el lenguaje de la misma da un aviso definido con respecto a la conducta prohibida u ordenada, de acuerdo al significado común y corriente." D. Nevares-Muñiz, *Código Penal de Puerto Rico: revisado y comentado*, San Juan, Ed. Rev. C. Abo. P.R., 1986, pág. 17.

Los artículos del Código Penal pertinentes a los hechos de este caso son claros en cuanto a cuál es la conducta que criminalizan. Son suficientemente claros también en cuanto responsabilizan a los *funcionarios o empleados* públicos" por la omisión o negligencia en el cumplimiento del deber. De manera que hasta ahí no hay problema de vaguedad. Ahora bien, cuando se trata de si estos artículos dan a una persona

prudente y razonable una advertencia adecuada sobre qué personas están incluidas en los mismos, nos preguntamos si es razonable pretender que un empleado de la Telefónica se sienta debidamente informado sobre su carácter de funcionario público y en esa medida sujeto a las obligaciones de los Arts. 214 y 215 del Código Penal, 33 L.P.R.A. secs. 4365 y 4366. *Tal determinación no había sido hecha por este Tribunal* y se había señalado expresamente en *Torres v. P.R. Telephone Co.*, supra, que no se había decidido que los empleados de la Telefónica fueran empleados públicos, cuando ya la Telefónica había sido clasificada en *Torres Ponce v. Jiménez*, supra, como "público-privada" —una novel clasificación de cuño judicial no comprendida expresamente en el Código Penal— y cuando este propio Tribunal ha tenido que examinar la naturaleza privada o pública de la Telefónica caso a caso haciendo sus determinaciones.

Contestamos la pregunta retórica en la negativa pues consideramos irrazonable pretender que en las circunstancias antes apuntadas los empleados de la Telefónica pudiesen entender que eran empleados públicos para efectos de los aludidos artículos de nuestro Código Penal. En consecuencia, confirmaríamos la determinación del Tribunal Superior que declaró con lugar la moción de desestimación presentada por los acusados.

—O—

Voto particular de conformidad emitido por el Juez Asociado Señor Rebollo López.

Al *disentir* de la mayoría del Tribunal en *Torres v. P.R. Telephone Co.*, 118 D.P.R. 198, 204 (1987), expresamos, entre otras cosas y en lo pertinente, que:

La opinión mayoritaria, en primer lugar, evade enfrentarse y resolver, de una vez y para siempre, el punto verdaderamente importante y crucial que plantea el presente recurso;

*esto es, si los hombres y mujeres que laboran en la Puerto*
*Rico Telephone Co. son efectivamente empleados públicos, y,*
*como tales, tienen los mismos derechos que le garantiza*
*nuestro ordenamiento jurídico a los empleados del Estado*
*Libre Asociado de Puerto Rico.* (Énfasis suplido.)

Acogemos con beneplácito el hecho de que, *por fin*, este
Tribunal haya decidido *reconocer* que los empleados que laboran en la Puerto Rico Telephone Company efectivamente
son empleados públicos conforme las disposiciones pertinentes de nuestro ordenamiento jurídico. Dicha determinación naturalmente conlleva, como expresáramos en nuestro
disenso en *Torres v. P.R. Telephone Co.*, ante, *que a estas*
*personas se les tiene que brindar los mismos derechos que le*
*garantiza nuestro ordenamiento a los demás empleados del*
*Estado Libre Asociado de Puerto Rico.*

Procede que se enfatice el hecho de que la opinión que
hoy se emite *necesariamente implica* —aun cuando no se
diga en forma expresa en la misma— que la decisión emitida
en el citado caso de *Torres v. P.R. Telephone Co.*, ante, *ha*
*quedado revocada* en tanto y en cuanto la misma refrendó el
procedimiento disciplinario, a nuestro juicio ilegal, vigente
en la Puerto Rico Telephone Company mediante el cual el
presidente de la mencionada entidad personalmente selecciona y designa al oficial examinador que va a presidir, y resolver, los cargos que contra un empleado le ha radicado la
misma, "controlando" de esta forma la Compañía el proceso
adjudicativo a nivel administrativo.

*Dicho procedimiento* —violativo del debido procedimiento de ley— *no puede subsistir después de la decisión*
*hoy emitida.* Ello necesariamente es así ya que como empleados públicos que son, y a los cuales les cobija el "principio del mérito", los hombres y las mujeres que laboran en la
Puerto Rico Telephone Company tienen el *derecho* a contar
con un procedimiento disciplinario, a nivel administrativo,
*cuando menos equivalente al que tienen los demás em-*

*pleados del Gobierno de Puerto Rico bajo las disposiciones de la Ley de Personal del Servicio Público de Puerto Rico.*

Como expresáramos en nuestro disenso en *Torres v. P.R. Telephone Co.*, ante, pág. 207:

> Debe mantenerse siempre presente que la esencia misma de la garantía del "debido procedimiento de ley", y, por ende, de lo que constituye un procedimiento justo e imparcial, reside precisamente *en la imparcialidad y neutralidad* de aquel que tiene que decidir la cuestión en controversia. *In re Murchison*, 349 U.S. 133 (1965). Esta visión, como sabemos, ha sido extendida por analogía a las determinaciones de las agencias administrativas. *Withrow v. Larkin*, 421 U.S. 35 (1975).
>
> Resultan pertinentes e iluminantes las expresiones del Tribunal Supremo de Estados Unidos en *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980), a los efectos de que:
> "*The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases.* This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, *the prevention of unjusitified or mistaken deprivations* and the promotion of participation and dialogue by affected individuals in the decisionmaking process. See *Carey* v. *Piphus*, 435 U.S. 247, 259–262, 266–267 (1978). The *neutrality requirement* helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. See *Mathews* v. *Eldrige*, 424 U.S. 319, 344 (1976). At the same time, it preserves both *the appearance and reality of fairness*, 'generating the feeling, so important to a popular government, that justice has been done,' Joint *Anti-Fascist Committee v. McGrath*, 341 U.S 123, 172 (1951) (Frankfurter, J., *concurring*), by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case *with assurance that the arbiter is not predisposed to find against him.*" (Énfasis suplido y en el original.)