DANIEL RODRÍGUEZ DÍAZ, CÉSAR FLORES CARRASQUILLO y OTROS, demandantes y peticionarios, *v.* AUTORIDAD DE TELÉFONOS DE PUERTO RICO y PUERTO RICO TELEPHONE COMPANY, demandados y recurridos.

*Número:* CC-97-205          *Resuelto:* 29 de mayo de 1998

*Margarita Carrillo Iturrino*, abogada de los peticionarios; *Heber E. Lugo Rigau* y *Héctor J. Pérez*, de *Goldman, Antonetti & Córdova*, abogados de los recurridos.

PER CURIAM:

## I

Daniel Rodríguez Díaz, César Flores Carrasquillo, Miguel Meléndez Acosta y Segundo Díaz Ortiz —empleados de la Puerto Rico Telephone Company (en adelante la P.R.T.C.)—[1] solicitaron una sentencia declaratoria del Tribunal de Primera Instancia, Sala Superior de Bayamón, para que se les acreditase e incorporase a su sistema de retiro los años de servicio prestados previamente en agencias gubernamentales.

Ellos fundamentaron este reclamo en la *Ley de Reciprocidad*, Ley Núm. 59 de 10 de junio de 1953, según enmendada, 3 L.P.R.A. sec. 797 *et seq.* Además, alegaron que la Ley de Seguridad de Ingresos por Jubilación —*Employee Retirement Income Security Act of 1974* (en adelante la

---

[1] Subsiguientemente, Miguel A. Rivera Soto y setenta y cuatro (74) otros empleados de la Puerto Rico Telephone Company (en adelante la P.R.T.C.) solicitaron intervenir. Dicha intervención fue denegada el 16 de febrero de 1993 y notificada el 24 de febrero de 1993.

E.R.I.S.A.), no aplicaba a la P.R.T.C., aun cuando dicha empresa estaba suscrita a ésta. En su contestación, la P.R.T.C. negó la procedencia de dicho reclamo y adujo, como defensas afirmativas, una falta de jurisdicción sobre la materia por estar el campo ocupado por la ley federal E.R.I.S.A. y el no agotar los remedios administrativos.

Subsiguientemente, la P.R.T.C. solicitó la desestimación. Expuso que la *Ley de Reciprocidad* no le aplicaba y que no existía una fuente estatuaria o jurisprudencial que proveyera el remedio solicitado. En oposición, los demandantes —Rodríguez Díaz *et al.*— argumentaron que el carácter público de la P.R.T.C., así como las reglas de hermenéutica correspondientes a los planes de jubilación y de pensiones de empleados públicos —que fomentan la movilidad dentro de las dependencias gubernamentales— impedían tal desestimación. El 19 de marzo de 1996 el ilustrado foro de instancia (Hon. César N. Cordero Rabell, Juez) desestimó. En su sentencia concluyó que la *Ley de Reciprocidad* no proveía el remedio solicitado y excluía a la P.R.T.C., en su definición de "patrono", y a su plan de retiro del concepto "Sistema de Retiro". Dicho foro se abstuvo de examinar la aplicabilidad de la E.R.I.S.A. y su posible efecto de campo ocupado.

Previa la solicitud de determinaciones de hechos adicionales, Rodríguez Díaz *et al.* apelaron. Sostuvieron que el tribunal de instancia erró al interpretar restrictivamente las leyes de retiro y determinar en específico que la *Ley de Reciprocidad* no aplicaba. El 21 de enero de 1997 el reputado Tribunal de Circuito de Apelaciones (Hons. Ramos Buonomo, Córdova Arone y González Román, Jueces) confirmó. En reconsideración, reiteró su criterio. Inconforme, a solicitud de Rodríguez Díaz *et al.*, revisamos vía *certiorari*.[2]

---

[2] Discuten los señalamientos siguientes:

"PRIMER ERROR Incidió el Tribunal de Circuito de Apelaciones al no considerar los argumentos relacionados con la inaplicabilidad de la 'Employee Retirement Income Security Act of 1974' a la Puerto Rico Telephone Company, a pesar de que el

## II

De su faz, este caso plantea varias controversias cuyo núcleo se reduce inicialmente a determinar si la *Ley de Reciprocidad* aplica y hace viable el remedio solicitado. Examinémosla.

El Art. 1 de la Ley Núm. 59 de 10 de junio de 1953 (3 L.P.R.A. sec. 797) define así su alcance:

> ... [S]e establece un plan para garantizar la continuidad de créditos por servicios ... entre el Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades, el Sistema de Anualidades y Pensiones para Maestros de Puerto Rico, el Sistema de Retiro de la Universidad de Puerto

Tribunal de Primera Instancia en su sentencia de modo expreso concluyó que el plan de retiro de la telefónica se rige por esta ley, sin exponer los fundamentos bajo los cuales llegó a tal conclusión.

"SEGUNDO ERROR Incidió el Tribunal de Circuito de Apelaciones al concluir que los recurrentes no tienen derecho a que se les transfieran al Plan de Retiro de la [P.R.T.C.] los años de servicios prestados en agencias y departamentos del E.L.A. para los que cotizaron en el Sistema de Retiro de los Empleados del Gobierno y la Judicatura.

"TERCER ERROR Erró el Tribunal de Circuito de Apelaciones al concluir que la naturaleza de subsidiaria de la [P.R.T.C.] de una empresa pública impide que se le reconozca a los empleados recurrentes una continuidad de derechos y se les acredite al sistema de retiro de la Telefónica los años de servicios acumulados en el Sistema de Retiro de los Empleados del Gobierno.

"CUARTO ERROR Incidió el Tribunal de Circuito [de Apelaciones] al concluir que los beneficios que reclaman los peticionarios ño dependen de la función publica que realizan como empleados de la Telefónica y sí del sistema de remuneración que les aprovecha y de las disposiciones de ley que gobiernan cada sistema de retiro en particular.

"QUINTO ERROR Erró el Tribunal de Circuito de Apelaciones al concluir que la forma distinta en que se retribuye a la gran mayoría de los empleados de la Telefónica y el derecho a la negociación colectiva de los empleados unionados son criterios que impiden se reconozca el derecho a que se les acrediten los años de servicio prestados en agencias y departamentos del Estado Libre Asociado al Sistema de Retiro de la Telefónica.

"SEXTO ERROR Incidió el Tribunal de Circuito de Apelaciones al concluir que a pesar de que los empleados de la Telefónica se les ha reconocido jurisprudencialmente su carácter de empleados públicos ello no es necesariamente el factor determinante al decidir la forma en que han de tratarse sus derechos y, en particular, el de jubilación, y concluir que el factor decisivo es el fin económico que persigue dicha corporación.

"SÉPTIMO ERROR Cometió error el Tribunal de Circuito al determinar que la continuidad de créditos entre los sistemas de retiro de empleados públicos que garantiza el artículo 3 de la Ley de Reciprocidad, 3 L.P.R.A. sec. 799, es para sistemas que se nutren de aportaciones conjuntas y sean de similar naturaleza." Petición de *certiorari*, págs. 3–4.

Rico, el Sistema de Retiro de los Empleados de la Autoridad de Energía Eléctrica de Puerto Rico y cualquier otro sistema que se creare en el futuro mediante el cual los empleados participantes de esos sistemas mantengan la continuidad de todos sus derechos por todos los servicios prestados al Estado Libre Asociado de Puerto Rico, sus instrumentalidades y dependencias cubiertas por cualquier sistema de retiro.

El Art. 2 de esta ley define como "patrono" al "Gobierno del Estado Libre Asociado de Puerto Rico y cualquier empresa pública o instrumentalidad del Gobierno Estatal de Puerto Rico, *pero excluyendo las empresas subsidiarias de tales instrumentalidades o empresas públicas*, e incluirá la Universidad de Puerto Rico y la Asociación de Maestros de Puerto Rico". (Énfasis suplido.) 3 L.P.R.A. sec. 798. El término "patrono" es utilizado para delinear las empresas o instrumentalidades gubernamentales mencionadas en el Art. 1, *supra*, las cuales están obligadas a reconocer los derechos adquiridos por el servicio prestado por empleados que se trasladen entre éstas.

A la luz de esta diferencia, ¿cae la P.R.T.C. bajo la definición legal de "patrono"? La determinación requiere repasar suscintamente su origen.

La Asamblea Legislativa aprobó la Ley de la Autoridad de Teléfonos de Puerto Rico, Ley Núm. 25 de 6 de mayo de 1974 (27 L.P.R.A. sec. 401 *et seq.*) y creó la *Autoridad de Teléfonos de Puerto Rico*. Su Exposición de Motivos, 1974 Leyes de Puerto Rico 144, explica que "será una corporación pública que adquirirá y operará ... todo el sistema de comunicación telefónica y telegráfica de Puerto Rico". Su Art. 9 —*Corporaciones Subsidiarias*— dispone que "nada en esta ley se interpretará como que se le concede a la Puerto Rico Telephone Company o a cualquier compañía cuyo capital sea adquirido por la Autoridad, la condición de una corporación pública del Estado Libre Asociado de Puerto Rico". Leyes de Puerto Rico, *supra*, pág. 153. Así, el Informe Conjunto de las Comisiones de Gobierno, Ha-

cienda, Desarrollo Socioeconómico y Planificación, Comercio e Industria, Asuntos del Consumidor y Jurídico Civil, pág. 39, la presenta como "una corporación privada *subsidiaria de la Autoridad.* Esta preservación del *status* de [compañía privada] servir[ía] para asegurar la tributabilidad de los intereses que se paguen sobre ciento veinte (120,000,000) millones en obligaciones vigentes [(*deventures*)]. Una vez vencida o retirada la deuda de la Telefónica, la Autoridad podría disolver[la]. ... [En adición, permitiría flexibilidad en la planificación y estructuración de la Telefónica]". (Énfasis suplido.) Debate del Senado sobre el P. del S. 737 de 26 de abril de 1974, 2da Sesión Ordinaria, 7ma Asamblea Legislativa, pág. 42.

El Art. 5 de la Ley Núm. 25, *supra*, 27 L.P.R.A. sec. 405, ordenó a la Autoridad de Teléfonos que adquiriera todas las acciones comunes emitidas y en circulación de la P.R.T.C. —a la sazón, compañía privada organizada al amparo de la Ley de Corporaciones del estado de Delaware— que tenía la franquicia para proveer la mayor parte del servicio telefónico en Puerto Rico.

Completada su adquisición, en varias ocasiones nos hemos expresado sobre su naturaleza. En *Torres Ponce v. Jiménez*, 113 D.P.R. 58 (1982), extendimos el principio de mérito a la Autoridad de Teléfonos *y a su subsidiaria*, la P.R.T.C., "no obstante su organización como corporación privada". Allí clasificamos a la P.R.T.C. como una corporación público-privada para distinguirla de las corporaciones creadas por estatutos y de las establecidas bajo leyes de corporaciones privadas que pertenecen, completa o parcialmente, al Estado. Esta designación mixta, público-privada, le permite a la P.R.T.C. cumplir con sus propósitos de manera eficaz. En *P.R. Tel. Co. v. Rivera Marrero*, 114 D.P.R. 360 (1983),([3]) y en *Pueblo v. Hernández Torres Barreda,*

---

([3]) La P.R.T.C. es una corporación público-privada, y por su naturaleza está sujeta a la fiscalización por el Contralor de Puerto Rico. La Ley Núm. 92 de 4 de junio de 1983 enmendó el Art. 9 de la Ley Núm. 25 de 6 de mayo de 1974 (27 L.P.R.A.

125 D.P.R. 560 (1990),[4] ratificamos y expandimos *Torres Ponce v. Jiménez*, supra.

## III

■ La *Ley de Reciprocidad* revela diáfanamente la intención de la Asamblea Legislativa de excluir de su ámbito y beneficios a *las empresas subsidiarias* de instrumentalidades o empresas públicas. No se cuestiona seriamente que la P.R.T.C. es una corporación *subsidiaria* de la Autoridad de Teléfonos y ésta, a su vez, una corporación pública del E.L.A. Como tal, está fuera de la definición de "patrono" establecida en la *Ley de Reciprocidad*, y sus empleados están excluidos de recibir sus beneficios.

Esta conclusión no varía por ser la Ley de Reciprocidad anterior a la creación de la Autoridad de Teléfonos y la adquisición de la P.R.T.C. La Asamblea Legislativa no ha extendido estos beneficios a los empleados de la P.R.T.C., aunque sí a los de la Autoridad de Teléfonos por su condición de instrumentalidad pública. El carácter mixto (público-privado), que le hemos atribuido jurídicamente a la P.R.T.C., no tiene el efecto de extenderle la aplicabilidad de la *Ley de Reciprocidad. Ante este foro no se niega su condición de subsidiaria.*

■ Vía interpretación forzada, no podemos jurídica-

---

sec. 409) a los fines de disponer la fiscalización por el Contralor de los ingresos, las cuentas y los desembolsos de la Autoridad de Teléfonos, de la P.R.T.C. y de *cualesquiera corporaciones o entidades subsidiarias* de dicha Autoridad de Teléfonos.

(4) "[L]a Telefónica debe considerarse como una entidad cuya naturaleza es mixta o dual y, en consecuencia, según sea la situación que se tenga ante sí, ha de variar la forma en que se ha de tratar. No obstante, las situaciones bajo las cuales se considere como empresa privada son aquellas donde hacer lo contrario afectaría los propósitos que tuvo el legislador al aprobar el estatuto viabilizador. Esto es, el trato que como corporación privada reciba esta entidad ha de ser a los únicos fines de facilitar el fin económico que se persigue y su funcionamiento independiente con miras a ofrecer un mejor servicio." *Pueblo v. Hernández Torres Barreda*, 125 D.P.R. 560, 571 (1990).

mente extender un privilegio a una corporación *subsidia-ria* que el Legislador claramente negó. Aunque las leyes sobre las pensiones de retiro deben interpretarse liberalmente a favor del beneficiario,[5] en aras de esa liberalidad, no es permisible ignorar la letra de la ley.[6]

> ... En el desempeño normal de sus funciones, los tribunales están obligados a respetar la voluntad legislativa aunque los magistrados discrepen personalmente de la sabiduría de los actos legislativos. Interpretar una ley en forma que sea contraria a la intención del legislador implica la usurpación por la rama judicial de las prerrogativas de la rama legislativa. Por tanto, el intérprete debe abstenerse de sustituir el criterio legislativo por sus propios conceptos de lo justo, razonable y deseable. R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes de Puerto Rico*, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, Vol. I, Cap. 40, pág. 299.

Finalmente, aclaramos que la inaplicabilidad de la *Ley de Reciprocidad* no es debido a que los tipos de planes de retiro sean incompatibles entre sí o que un plan fue creado mediante un estatuto y el otro no. Surge en virtud de la intención y el texto claro del legislador de no beneficiar a los empleados de subsidiarias de instrumentalidades públicas, y de una determinación clara de que la P.R.T.C. sea una subsidiaria de una instrumentalidad pública.

*Se dictará sentencia confirmatoria.*

El Juez Presidente Señor Andréu García y los Jueces Asociado Señores Hernández Denton y Fuster Berlingeri disintieron sin opinión escrita.

---

[5] *Sanfiorenzo Zaragoza v. Adm. Sistemas de Retiro*, 138 D.P.R. 94 (1995); *Villamil Suárez v. D.T.O.P.*, 133 D.P.R. 805 (1993).

[6] "Cuando la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu." Art. 14 del Código Civil, 31 L.P.R.A. sec. 14.