TEXTO COMPLETO DE LA SENTENCIA
Acude ante este Tribunal la recurrente, American International Insurance Company, Inc. (AIICO), mediante el recurso de revisión administrativa para solicitarnos que revisemos una resolución emitida por la Oficina del Comisionado de Seguros de Puerto Rico (OCS) el 30 de noviembre de 2007 y notificada a las partes ese mismo día. En dicha resolución, la OCS modificó y confirmó una orden suya anterior e impuso a AIICO multas administrativas ascendentes a $484,000.00 por violaciones al Código de Seguros de Puerto Rico. Además, le ordenó a AIICO rembolsar $5,237,801.00 a ciertos asegurados a los que alegadamente le cobró primas en exceso.
Luego de examinados los escritos presentados por las partes, así como la normativa aplicable, resolvemos que procede revocar la resolución recurrida.
I
El azaroso trámite procesal que ha tenido el caso de marras tuvo su origen el 7 de agosto de 2002 cuando el *829 entonces Comisionado de Seguros de la OCS, Ledo. Fermín M. Conteras Gómez, emitió una orden en contra de AIICO. En la misma, señaló que efectuó una investigación sobre el cobro de primas para pólizas dé seguro de condominios y encontró que AIICO había violentado ciertas disposiciones del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 101 et seq., durante el período de enero de 1996 hasta junio de 2001. Específicamente, la OCS le imputó a AIICO haber concedido rebajas en primas no autorizadas, producto de la utilización de tarifas no aprobadas; haber cobrado primas en exceso de la prima calculada a base de la tarifa aprobada; y no haber presentado archivo alguno conforme a las disposiciones del Código de Seguros, que le facultara, tras la aprobación correspondiente, a desviarse de las tarifas o a recargar las tarifas aprobadas por la OCS para los seguros de propiedad de condominios.
En la orden, el entonces Comisionado de Seguros dispuso que AIICO, al suscribir pólizas de seguros para condominios, debía cesar y desistir la práctica de conceder rebajas no autorizadas y la práctica de cobrar primas en exceso. En la orden, además, le impuso a AIICO las siguientes multas administrativas: $372,000.00 equivalentes a $2,000.00 por cada una de las 186 pólizas en las que concedió rebaja y $156,000.00 equivalentes a $1,000.00 por cada una de las 156 pólizas en las que cobró primas en exceso. A su vez, le ordenó devolverle a los asegurados las primas cobradas en exceso, las cuales totalizaron $5,286,138.00 o en la alternativa concederle a los asegurados un crédito al momento de la renovación de las pólizas.
En la orden se le apercibió a AIICO de su derecho a solicitar una vista administrativa dentro de los 20 días siguientes a su notificación. Inconforme con la referida orden el 16 de septiembre de 2002, AIICO solicitó la celebración de una vista administrativa.
Así las cosas, el 23 de octubre de 2002, AIICO presentó ante la OCS una moción de desestimación fundamentándose en que las penas impuestas estaban prescritas y en que el- Comisionado de Seguros carecía de autoridad para imponerlas. No obstante, el 4 de noviembre de 2002, un Oficial Examinador de la OCS denegó la moción de desestimación solicitada. El 14 de noviembre de 2002, AIICO solicitó reconsideración; sin embargo, también fue denegada.
Por tal razón, AIICO compareció ante este Tribunal a través del recurso de revisión administrativa KLRA-2002-00928. El referido recurso fue desestimado por falta de jurisdicción. Resolvimos que AIICO había recurrido de una determinación interlocutoria de la OCS, la cual no era revisable por no constituir una determinación final del organismo administrativo, requisito impuesto por ley para la revisión judicial. De nuestra determinación, AIICO recurrió vía certiorari al Tribunal Supremo de Puerto Rico (CC-03-0249). No obstante, el auto fue denegado.
A su vez, el 20 de noviembre de 2002, AIICO presentó ante la OCS una moción para que se nombrara un juez administrativo que dirigiese los procedimientos y adjudicara el caso. Tal requerimiento fue denegado por un Oficial Examinador de la OCS el 3 de diciembre de 2002. Nuevamente, el 26 de diciembre de 2002 AIICO presentó una moción para que se designara un juez administrativo; no obstante, esta vez solicitó que fuera uno ajeno a la OCS. El 30 de enero de 2003 fue denegada dicha petición.
Insatisfecho con tal proceder, AIICO compareció nuevamente ante este Foro mediante el recurso de revisión administrativa KLRA-2003-00148. Dicho recurso fue desestimado por falta de jurisdicción, toda vez que la resolución recurrida no era una determinación final de la OCS y además el recurso fue presentado fuera de término.
El 5 de febrero de 2003, la OCS presentó una moción para que se dictara resolución sumaria parcial por alegadamente no existir controversia en tomo a que AIICO había concedido rebajas en primas y había cobrado primas en exceso, actos prohibidos por el Código de Seguros. AIICO, por su parte, se opuso a que se dictara un remedio sumario.
*830 Examinadas ambas solicitudes, el 7 de abril de 2003, un Oficial Examinador de la OCS dictó una resolución sumaria parcial. Allí concluyó que era un hecho incontrovertido que durante el período investigado, AIICO había suscrito contratos de seguros de propiedad para condominios, por los cuales cobró primas que no se ajustaban a los tipos inscritos aprobados, que eran aplicables a tales contratos. Concluyó, además, que no existía controversia en cuanto a que AIICO no había solicitado la autorización de la OCS para cobrar primas distintas a las aprobadas y que durante el período investigado y hasta ese momento, la OCS no había expedido orden alguna o promulgado regla o reglamento, mediante el cual hubiera suspendido o modificado el requisito de presentación en cuanto a los contratos de seguros de propiedad de condominios. Así pues, determinó que AIICO violentó los Artículos 12.130, 27.090(1) y (2) 27.160(2) y (3) del Código de Seguros de Puerto Rico, 26 LPRA sees. 1213, 2709 (1) y (2) y 2716(2) y (3).
Ante tal determinación, AIICO compareció ante nos mediante el recurso de revisión administrativa KLRA-2003-00375. Su recurso fue desestimado por falta de jurisdicción, por razón de que no se trataba de una resolución final de la agencia. Nuevamente inconforme, AIICO acudió ante el Tribunal Supremo mediante el recurso de certiorari (CC-2004-0396). El Tribunal Supremo no expidió el recurso solicitado.
Luego de múltiples trámites procesales innecesarios aquí pormenorizar, incluyendo la celebración una vista administrativa, el 25 de enero de 2007, la OCS presentó uiia moción para que se dictara resolución sumaria sobre los asuntos que aún quedaban pendientes por resolver. Según alegó, únicamente restaba por resolver lo siguiente: el número de casos con aumentos y rebajas, la cantidad a devolver a los asegurados y el monto de las penalidades a ser impuestas por las violaciones al Código de Seguros. Alegó, también, que por no estar en controversia los hechos materiales del caso, solamente restaba aplicar el derecho.
Respecto a las penalidades, la OCS le solicitó al Oficial Examinador que le impusiera a AIICO $360,000.00 por los 180 casos con rebajas; $124,000.00 por los 124 casos con aumentos y que le ordenara la devolución a los asegurados de las primas cobradas en exceso, a saber, $5,237,801.00. Según surge del expediente, la moción se acompañó de múltiple pmeba documental, incluyendo las pólizas de propiedad para condominios que AIICO suscribió y cobró durante el período investigado.
Por su parte, el 2 de marzo de 2007, AIICO presentó una moción oponiéndose a que se resolviera sumariamente. Argumentó que era improcedente dictar una resolución sumaria, toda vez que existían controversias de hechos que necesariamente requerían la celebración de una vista administrativa para ser dilucidadas. Además, señaló que las partes habían acordado, con el aval de Oficial Examinador, que una vez presentaran la estipulación parcial, la cual fue presentada el 12 de diciembre de 2006, se iba a celebrar una vista administrativa para dilucidar los asuntos pendientes. Según señaló AIICO, restaba por dilucidar, entre otros asuntos, los siguientes: la pmeba sobre atenuantes, la tarifación de la prima por inundación, la consideración del costo de reaseguro y la razonabilidad de las multas impuestas. El 2 abril de 2007, la OCS presentó una réplica a la oposición presentada por AIICO y ésta a su vez, el 23 de abril de 2007, presentó una dúplica.
Luego de examinadas las mociones, el 30 de noviembre de 2007, la OCS emitió una resolución sumaria suscrita por la actual Comisionada de Seguros, Leda. Dorelisse Juarbe Jiménez. Según expresó la Comisionada de Seguros, AIICO no había presentado pmeba que refutara los hechos materiales alegados por la OCS, a pesar de que se le concedió amplia oportunidad para expresarse. Por tanto, resolvió modificar la orden emitida el 7 de agosto de 2002 para imponerle a AIICO una multa administrativa de $124,000.00 por haber cobrado primas en exceso en 124 pólizas de seguros para condominios y una multa administrativa de $360,000.00 por haber concedido rebajas no autorizadas en la suscripción de 180 pólizas de seguros de propiedad para condominios, para un total de penalidad de $484,000.00. A su vez, le ordenó rembolsar $5,237,801.00 a los asegurados a los que alegadamente les cobró primas en exceso.
El 19 de diciembre de 2007, AIICO solicitó la reconsideración de dicha resolución sumaria. Sin embargo, el *831 4 de marzo de 2008 fue denegada tal solicitud. Esa determinación fue notificada a las partes el 5 de marzo de 2008.
Inconforme con el proceder de la Comisionada de Seguros de la OCS, el 4 abril de 2008, AIICO presentó el recurso de revisión que nos ocupa y nos solicita que revoquemos la resolución sumaria emitida por ésta. Según expone al resolver, la OCS cometió los siguientes señalamientos de error:

“Erró la Oficina del Comisionado de Seguros al dictar resolución sumaria sin haber concluido la vista administrativa y habiendo hechos en controversia.

Erró el Oficial Examinador de la Oficina del Comisionado de Seguros al declarar no ha lugar la solicitud de desestimación presentada por la parte compareciente, a pesar de que de la misma surge que las penas impuestas están prescritas y que el Comisionado de Seguros carece de jurisdicción para imponer las penas fijadas.

Erró la Oficina del Comisionado de Seguros al denegar la solicitud de nombramiento de juez administrativo.

Erró la Oficina del Comisionado de Seguros al violentar el debido proceso de ley que ampara a AIICO al no promulgar un Reglamento Adjudicativo y al no permitir descubrimiento de prueba. ”

Por su parte, la OCS acudió ente este Tribunal el 27 de mayo de 2008 para oponerse al recurso de revisión presentado por AIICO. Con el beneficio de la comparecencia de ambas partes, pasamos a resolver.
II
La Ley Núm. 170 del 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sees. 2101 et seq. (L.P.A.U.), fue aprobada con el propósito de sistematizar y crear un cuerpo de reglas mínimas que toda agencia debe observar al formular sus reglamentos y al llevar a cabo sus procedimientos adjudicativos. López v. Adm. Corrección, 174 D.P.R. _ (2008), 2008 J.T. S. 141; Olivo v. Secretario, 164 D.P.R. _ (2005), 2005 J.T.S. 33. Para promover la uniformidad en las agencias, la L.P.A.U. sustituyó los procedimientos administrativos que eran incompatibles con sus preceptos y ordenó el manejo de dichos asuntos de manera consistente con sus disposiciones. Id. Así pues, las disposiciones de la L.P.A.U. desplazan y tienen predominio sobre toda regla de una agencia que sea contraria a ésta. Perfect Cleaning v. Cardiovascular, 162 D.P.R. 745, 757 (2004).
La Sección 3.1 de la L.P.A.U. establece que cuando una agencia deba adjudicar formalmente una controversia, los procedimientos deben regirse de conformidad con sus disposiciones. 3 L.P.R.A. see. 2151; Franco v. Depto. de Educación, 148 D.P.R. 703, 713 (1999); Pagán Ramos v. F.S.E., 129 D.P.R. 888, 902-903 (1992). Según las Secciones 3.1 y 3.15 de la L.P.A.U., en todo proceso de adjudicación formal ante una agencia deben salvaguardarse las siguientes garantías procesales mínimas: derecho a una notificación oportuna de los cargos, querellas o reclamos; derecho a presentar evidencia y a ser oído; derecho a un adjudicador imparcial; derecho a que la decisión esté basada en el expediente oficial; y derecho a solicitar la reconsideración y la revisión judicial de una determinación administrativa adversa. 3 L.P.R.A. sees. 2151 y 2165; López v. Adm. Corrección, supra; Pagán Ramos v. F.S.E., supra, a la pág. 903.
La Sección 3.2 de la L.P.A.U. dispone que las agencias deben adoptar un reglamento para regular sus procedimientos adjudicativos de conformidad con sus disposiciones y el debido proceso de ley, siempre velando porque no se impongan requisitos que contravengan las pautas establecidas por el estatuto. 3 L.P.R.A. see. 2152; López v. Adm. Corrección, supra; Pagán Ramos v. F.S.E., supra, a la pág. 903. Ahora bien, en el campo del derecho administrativo, la norma de debido proceso de ley no tiene la rigidez que se le reconoce en el *832 campo penal. López y otros v. Asoc. de Taxis de Cayey, 142 D.P.R. 109, 113 (1996); A.D.C.V.P. v. Tribunal Superior, 101 D.P.R. 875, 882 (1974). El debido proceso de ley en la esfera administrativa no es un molde rígido que prive de flexibilidad a las agencias. López Vives v. Policía de P.R., 118 D.P.R. 219, 231-232 (1987). Sin embargo, se requiere que todo proceso sea uno justo y equitativo que respete la dignidad de los individuos afectados. López y otros v. Asoc. de Taxis del Cayey, supra, a la pág. 113; López Vives v. Policía de P.R., supra, a la pág. 231. De esta forma, el principio de debido proceso de ley ofrece protección contra la arbitrariedad administrativa. López y otros v. Asoc. de Taxis de Cayey, supra, a la pág 113.
El debido proceso de ley en el ámbito administrativo lo conforman la concesión de una vista previa, la oportuna y adecuada notificación, el derecho a ser oído, el derecho a confrontarse con testigos, el derecho a presentar prueba oral y escrita en su favor y la presencia de un adjudicador imparcial. López y otros v. Asoc. de Taxis de Cayey, supra, a la págs. 113-114; Henríquez v. Consejo Educación Superior, 120 D.P.R. 194, 202 (1987); Ortiz Cruz v. Junta Hípica, 101 D.P.R. 791, 795 (1973). Además, la decisión administrativa debe ser informada con conocimiento y comprensión de la evidencia. López y otros v. Asoc. de Taxis de Cayey, supra, a la pág. 114; A.D.C.V.P. v. Tribunal Superior, supra, a la pág. 883. Finalmente, deben efectuarse determinaciones de hechos y consagrarse los fundamentos para la decisión administrativa. López y otros v. Asoc. de Taxis de Cayey, supra, a la pág. 114.
La importancia de un adjudicador imparcial como parte de la garantía del debido proceso de ley ha sido destacada en múltiples ocasiones. Al respecto, el Tribunal Supremo expresó en Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194, 210 (1987):

“De todos los valores que informan la garantía del debido proceso, el valor de la percepción de la justicia es el que con mayor claridad dicta el uso de un adjudicador imparcial con criterios independientes. (Citas omitidas). La necesidad de imparcialidad adjudicativa en la infraestructura del debido proceso impide al adjudicador decidir un caso si tiene interés o prejuicio real identificable o cuando las circunstancias son tales que el riesgo de parcialidad es demasiado grande. ”

De forma similar, el Juez Asociado Rebollo López emitió una opinión disidente en el caso de Torres v. P. R. Telephone Co., 118 D.P.R. 198, 207 (1987), en la que explicó la importancia de dicha imparcialidad; allí expresó:

“Debe mantenerse siempre presente que la esencia misma de la garantía del “debido procedimiento de ley”, y, por ende, de lo que constituye un procedimiento justo e imparcial, reside precisamente en la imparcialidad y neutralidad de aquél que tiene que decidir la cuestión en controversia. ”

La Sección 3.3 de la L.P.A.U. faculta a las agencias para designar oficiales examinadores que presidan los procedimientos de adjudicación que se celebren en éstas. 3 L.P.R.A. 2153. A su vez, la referida Sección dispone que los jefes de las agencias pueden delegar la autoridad de adjudicar en uno o más funcionarios o empleados de las agencias, a los que se les designará con el título de jueces administrativos. Id. Sin embargo, se ha cuestionado y ha sido objeto de interpretación el requisito de que el adjudicador sea “funcionario o empleado” de la agencia.
El Tribunal Supremo en el caso de A.E.E. v. Rivera, 167 D.P.R. _ (2006), 2006 J.T.S. 34., avaló que el Director Ejecutivo de la Autoridad de Energía Eléctrica (A.E.E.) delegara la adjudicación de ciertas querellas contra empleados en funcionarios especializados que no son empleados regulares de la agencia, capaces de evaluar y adjudicar la controversia de forma imparcial, como lo son abogados con vasta experiencia. Según indicó el Tribunal Supremo, “[rjequerir que el adjudicador de las querellas sea un empleado o funcionario regular de la AEE en nada garantiza que la adjudicación será imparcial, que en última instancia es la garantía principal de la LPAU. ” A.E.E. v. Rivera, supra. Indicó, además, que aun cuando un adjudicador no forme parte *833 de la nómina de empleados regulares de la A.E.E. puede ser considerado funcionario de esa agencia a los fines de la Secdión 3.3 la L.P.A.U., toda vez que su labor redunda en un beneficio público, particularmente para la agencia concernida.
Por tal razón, nuestro más alto foro concluyó lo siguiente:
. “No es un requisito sine qua non que el adjudicador sea funcionario o empleado regular de la agencia. Basta conque el Oficial Examinador ejerza funciones propias del Director Ejecutivo de la AEE, por delegación de la agencia, en los procedimientos de adjudicación de querellas como el de autos. ” A.E.E. v. Rivera, supra.
Más aún, el Tribunal Supremo concluyó que es innecesario requerir que el jefe de la agencia tenga que acoger o avalar la decisión del adjudicador para que ésta sea final y así concluir el trámite administrativo. A.E. E. v. Rivera, supra.
De otra parte debemos señalar que nuestro derecho administrativo se basa en una actitud de gran consideración y deferencia por parte de los tribunales hacia las decisiones de las agencias administrativas. Vélez v. A.R.P.E., 167 D.P.R. _ (2006), 2006 J.T.S. 78. Los procesos administrativos y las determinaciones de hechos de las agencias están cobijados por una presunción de regularidad y corrección. Vélez v. A.R.P.E., supra; Henríquez v. Consejo de Educación Superior, supra, a la pág. 210. Esta presunción de regularidad y corrección debe ser respetada por los tribunales mientras la parte que la impugne no produzca suficiente evidencia para derrotarla. Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 130 (1998); citando a: Henríquez v. Consejo de Educación Superior, supra, a la pág. 210.
Esta deferencia, sin embargo, no equivale a la renuncia de la función revisora en instancias apropiadas y meritorias. Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85, 94 (1997); Fuertes y otros v. A.R.P.E., 134 D.P.R. 947, 953 (1993). Los tribunales se abstendrán de avalar la interpretación de la agencia si ésta: erró al aplicar la ley, actuó arbitraria, irrazonable o ilegalmente, o lesionó derechos constitucionales fundamentales. Hernández v. Centro Unido, 168 D.P.R. _ (2006); 2006 J.T.S. 140; P.C.M.E. v. J.C.A., 166 D.P.R. _ (2005), 2006 J. T.S. 7; San Antonio Maritime v. P.R. Cement Co., 153 D.P.R. 374, 396-397 (2001). Los tribunales podrán sustituir el criterio de la agencia por el propio, cuando no puedan hallar una base racional para explicar la decisión administrativa. Hernández v. Centro Unido, supra; Otero v. Toyota, 163 D.P.R. _ (2005), 2005 J.T. S. 13.
Al evaluar una determinación administrativa, la principal función judicial es aseguramos de que las agencias administrativas con poderes adjudicativos actúen dentro de la facultad delegada por la Asamblea Legislativa y que cumplan con los preceptos constitucionales, particularmente los dictados por el debido proceso de ley. Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., supra, a la pág. 435. “El control judicial de la actuación administrativa garantiza que los ciudadanos tengan un foro a donde recurrir para vindicar sus derechos y obtener un remedio frente a los organismos administrativos. ” Id. Por tanto, los tribunales estamos obligados a ser especialmente cuidadosos al revisar las decisiones administrativas para proteger a la ciudadanía contra posibles actuaciones arbitrarias. Id., citando a Hernández Denton v. Quiñones Desdier, 102 D.P.R. 218, 223-224 (1974).
A tenor con esta normativa, examinemos los errores planteados por AIICO.
III
De un análisis del recurso que hoy nos ocupa, claramente se desprende que el planteamiento medular de AIICO ante este Tribunal es que la OCS violentó su garantía a un debido proceso de ley. Según señala, la OCS lo privó de dicha garantía al denegar su solicitud para que nombrara un juez administrativo; al resolver sumariamente existiendo hechos en controversia y sin haber concluido la vista administrativa; al no permitirle *834 cierto descubrimiento de prueba; y al no haber promulgado un reglamento adjudicativo que reglamentara los procedimientos ante dicha agencia.
Aunque en el campo del derecho administrativo, el debido proceso de ley no tiene la rigidez que se le reconoce en la esfera penal, es indispensable para cumplir con dicha garantía constitucional, que todo procedimiento adjudicativo sea uno justo y equitativo. El debido proceso de ley en el ámbito administrativo lo conforman: la concesión de una vista previa; la oportuna y adecuada notificación; el derecho a ser oído; el derecho a confrontarse con testigos; el derecho a presentar prueba oral y escrita en su favor; y la presencia de un adjudicador imparcial.
Hace más de dos (2) décadas el Juez Asociado Rebollo López emitió una opinión en el caso de Torres v. P. R. Telephone Co., supra, a la pág. 207 en la que destacó la importancia de la imparcialidad del juzgador como parte de la garantía constitucional del debido proceso de ley. Allí expresó:

“Debe mantenerse siempre presente que la esencia misma de la garantía del “debido procedimiento de ley”, y, por ende, de lo que constituye un procedimiento justo e imparcial, reside precisamente en la imparcialidad y neutralidad de aquél que tiene que decidir la cuestión en controversia. ”

Cónsono con lo anterior, el Tribunal Supremo ha expresado que “[l]a necesidad de imparcialidad adjudicativa en la infraestructura del debido proceso impide al adjudicador decidir un caso si tiene interés o prejuicio real identificable o cuando las circunstancias son tales que el riesgo de parcialidad es demasiado grande. ” Henríquez v. Consejo Educación Superior, supra, a la pág. 202.
Según surge del expediente, en este caso, la OCS investigó a AIICO, lo acusó de violaciones al Código de Seguros, le impuso multas por las alegadas violaciones, le concedió el derecho a vista, argumentó en la vista en contra de AIICO frente al Oficial Examinador de dicha agencia y luego adjudicó las violaciones imputadas. AI así actuar, la OCS fue parte y juez en el caso.
Más grave aún, surge del expediente que estando pendiente una vista administrativa, la OCS presentó una moción para que se dictara una resolución sumaria sobre los asuntos que quedaban por resolver en el caso. AIICO se opuso a que se dictara el remedio sumario. Dicha moción fue resuelta por la OCS a través de la Comisionada de Seguros. Del expediente no surge que el Oficial Examinador que ventilaba el caso emitiera recomendación alguna respecto a esa moción. Por tanto, la OCS solicitó que se dictara una sentencia sumaria en el caso y ella misma resolvió la referida solicitud. Así pues, una de las partes del caso fue la que lo adjudicó y la que emitió la resolución que hoy revisamos.
Tales actuaciones hacen que sea cuestionable la imparcialidad de la OCS al adjudicar, elemento fundamental del debido proceso de ley. Después de examinar tales circunstancias, somos del criterio de que la OCS, al combinar las funciones de investigar, acusar y adjudicar, acotaba un riesgo de parcialidad demasiado grande que le impedía ser un juzgador neutral e imparcial.
En el caso de marras, las funciones de investigar, acusar y adjudicar tienen que ser separadas para garantizar que AIICO tenga un adjudicador imparcial según requiere el debido proceso de ley. Lo anterior, se logra mediante el nombramiento de un juez administrativo que adjudique la controversia.
La Sección 3.3 de la L.P.A.U. faculta los jefes de las agencias para delegar la autoridad de adjudicar en uno o más funcionarios o empleados de las agencias, a los que se les designará con el título de jueces administrativos. 3 L.P.RA. 2153. Por ende, la OCS está facultada por la L.P.A.U. para nombrar un juez administrativo que adjudique este caso. A esos efectos, ordenamos a la OCS que nombre un juez administrativo que adjudique de forma imparcial este caso.
*835 Es menester destacar que el Tribunal Supremo ha resuelto que es innecesario requerir que el jefe de la agencia tenga que acoger o avalar la decisión del adjudicador para que ésta sea final y así concluir el trámite administrativo. Véase A.E.E. v. Rivera, supra. Por tanto, la decisión que emita el juez administrativo que nombre la OCS será la determinación final de dicha agencia y de ella las partes podrán recurrir ante este Tribunal, de entenderlo necesario.
La garantía del debido proceso de' ley, además, salvaguarda el derecho de las partes a que se le concede una ■ vista y el derecho a ser oídos. En el caso de autos, AIICO sostiene que incidió la OCS al emitir una resolución sumaria sin que hubiera concluido la vista administrativa y existiendo hechos en controversia. No obstante, nos abstendremos de decidir sobre dicho señalamiento de error, pues tal determinación deberá ser hecha por el juez administrativo que deberá nombrar la OCS. El juez administrativo deberá determinar si en este caso existen controversias de hechos que ameriten la celebración de una vista administrativa o si en efecto procede que’se dicte sentencia sumaria.
El debido proceso de ley,- también, garantiza el derecho de las partes a confrontarse con testigos y a presentar prueba oral y escrita en su favor. AIICO sostiene que la OCS erró al denegarle su solicitud de para tomarle deposición a dos testigos anunciados por dicha agencia.
Sobre lo.s mecanismos de descübrimiento de prueba, la Sección 3.8 de la L.P.A.U. dispone, en lo pertinente:
■ “(a) Los procedimientos de descubrimiento de prueba no serán de aplicación .a los casos-de adjudicación administrativa, a menos que se autoricen en los reglamentos de procedimiento de adjudicación de la agencia y así lo autorice el funcionario que presida el procedimiento adjudicativo. No obstante lo ahteriormént'e dispuesto, en los reglamentos de las agencias se garantizará a todo querellado el derecho d.los mecanismos de descubrimiento de prueba para los casos en que el procedimiento de adjudicación sea promovidos-iniciativa de la agencia. 3 L.P.R.A. 2158 (a).” .
No empece a lo dispuesto por la citada Sección, al día de hoy, la OCS no ha promulgado un reglamento adjudicativo. Por tanto, los procedimientos de descubrimiento de prueba ante la OCS están desregulados y se llevan a cabo de la forma que disponga el funcionario que presida los procedimientos adjudicativos. Así pues, la OCS carece de un reglamento que establezca el alcance del descubrimiento de prueba y los criterios que se deben considerar para conceder o denegar una solicitud para descubrir prueba. Por tal razón, en lo que respecta al descubrimienttí de prueba, AIICO estuvo a la merced.de la OCS. Este Tribunal no puede avalar tal proceder.
. Resolvemos que la procedencia o no del descubrimiento de prueba solicitado por AIICO deberá ser resuelta por el juez administrativo que nombre la OCS.
AIICO señala que al carecer de un reglamento adjudicativo, la OCS le violentó su. garantía de debido proceso de ley. La Sección 3.2 de la L.P.A.U. dispone que las agencias deben adoptar un reglamento para regular sus procedimientos adjudicativos, esto de conformidad con sus disposiciones y el debido proceso de. ley, siempre velando porque no se impongan requisitos que contravengan las pautas establecidas por el estatuto. Véase 3 L.P.R.A. see. 2152/Al no existir un reglamento que regule los procedimientos adjudicativos en la OCS, ésta puede actuar arbitrariamente y.violentar el debido proceso de ley de las partes.
Cuando las agencias aprueban reglamentos que delimitan y precisan sus facultades, se evitan actuaciones ilegales o arbitrarias por parte de éstas. Véase M. & B. S., Inc. v. Depto. de Agricultura, 118 D.P.R. 319, 326 (1987). Por tanto, exhortamos a la OCS a que cumpla con lo establecido en la Sección 3.2 de la L.P.A.U. y-promulgue prontamente un reglamento para regular los procedimientos de adjudicación formal que ante así se celebran.
*836 Tal reglamento deberá ser cónsono con las disposiciones de la L.P.A.U. y las garantías del debido proceso de ley. Un reglamento que rija los procedimientos adjudicativos en la OCS no sólo establecería la forma y manera en que se dirigirán los procedimientos ante dicha agencia, sino que le otorgaría a las partes confianza en los procesos. No obstante, mientras la OCS apmeba y promulga el referido reglamento, deberá cumplir rigurosamente con las disposiciones sobre procedimientos adjudicativos contenidas en la L.P.A.U.
Luego de analizar las actuaciones de la OCS al adjudicar el caso de autos, a la luz de las garantías que conforman el debido proceso de ley, concluimos que la OCS le violentó a AIICO dicha garantía constitucional. Indudablemente, la OCS actuó arbitrariamente y trastocó el debido proceso de ley de AIICO al denegarle su solicitud para que nombrara un juez administrativo, al resolver una moción de sentencia sumaria que ella misma presentó y al carecer de un reglamento adjudicativo que regule los procedimientos ante sí.
De otra parte, AIICO sostiene que erró el Oficial Examinador de la OCS al denegar la moción de desestimación que presentó. Según argumenta, procedía la desestimación del caso debido a que las penalidades que le fueron impuestas por la OCS estaban prescritas, por lo que aduce que el entonces Comisionado de Seguros carecía de jurisdicción para imponérselas.
Surge del expediente que el Oficial Examinador denegó la moción de desestimación por prescripción de AIICO sin fundamentarla. Por tal razón, este Tribunal carece de los fundamentos de derecho que tuvo el Oficial Examinador para así dictaminar. El juez administrativo que nombre la OCS deberá también dilucidar la controversia sobre la prescripción y en su dictamen final deberá fundamentar su decisión.
Aun cuando nuestro derecho administrativo se basa en una actitud de gran consideración y deferencia por parte de los tribunales hacia las decisiones de las agencias administrativas, esa deferencia no equivale a la renuncia de nuestra función revisora en instancias apropiadas y meritorias, como es el caso de autos. Los tribunales nos abstendremos de avalar la determinación de una agencia si ésta actuó arbitraria, irrazonable o ilegalmente o lesionó derechos constitucionales fundamentales. Indudablemente, la OCS actuó arbitrariamente y lesionó derechos constitucionales de AIICO.
IV
Por los fundamentos expuestos, revocamos la determinación recurrida y devolvemos el caso a la Oficina del Comisionado de Seguros para que se nombre un juez administrativo. Dicho juez administrativo deberá dilucidar si procede la celebración de una vista administrativa así como si procede el descubrimiento de prueba solicitado por AIICO y si las violaciones imputadas a AIICO están o no prescritas.
Una vez el finalizado el caso, el juez administrativo deberá emitir una resolución fundamentada con las determinaciones de hechos y conclusiones de derecho que correspondan para que la parte que así lo desee pueda acudir a este foro en revisión judicial.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones